## NORTON v. SHOTMEYER et al.

### Civ. A. No. 4644.

District Court, D. New Jersey.

June 6, 1947.

Hobart, Minard & Cooper and Duane E. Minard, Jr., all of Newark, N. J., for plaintiff.

Joseph V. Fumagalli, of Paterson, N. J., for defendant.

MEANEY, District Judge.

This suit was instituted initally by Henry K. Norton as trustee of the New York Susquehanna & Western Railroad Company, to recover unpaid demurrage charges and interest thereon arising out of the alleged detention by defendants of certain cars of fuel oil for unloading beyond free time as prescribed by the applicable railroad tariffs. Defendants in their answer denied liability and by way of defense asserted an agreement alleged to have been made by the parties hereto, under which plaintiff is alleged to have agreed not to sue for any demurrage charges if defendants would not bring suit for claimed losses alleged to have resulted from plaintiff's negligence in causing delay in delivery.

Defendants, by way of counterclaim, seek to recover for losses allegedly suffered as a result of delays in delivery of fuel oil, on the grounds that the plaintiff was negligent in failing to maintain adequate equipment for delivery of defendant's cars to their sidings and was further negligent in permitting their switches to become frozen so that cars could not be delivered to their sidings, causing delay in the delivery of such cars, and resulting in injury and loss to the defendants. In addition, de-

fendants by way of counterclaim seek to recover for damages alleged to have been suffered through the erroneous delivery by the plaintiff to the defendants of an 8000 gallon tank car of oil, representing the same to be defendants' oil, when in fact it was a car of oil consigned to the United States Navy, which, when the contents were mixed by defendants with their own fuel oil, adulterated the oil in their tank, thereby causing a loss for which damages are sought.

To defendants' answer and counterclaim, plaintiff filed an answer and counterclaim. In his answer he denied that defendants' counterclaim stated any cause of action and denied generally the allegations contained therein.

In his counterclaim plaintiff sets up a count for the value of the oil belonging to the United States Navy which was mistakenly delivered to the defendants and thereafter alleged to have been converted by them.

The matter is presently before the court on plaintiff's motion for summary judgment pursuant to Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c and is submitted on the pleadings, affidavit and documentary evidence.

■ In the oral argument and in the briefs filed on this motion, the plaintiff has urged the additional defense of improper joinder, on the theory that the defendant may not properly join by way of counterclaim any alleged cause of action arising out of negligence, delays, loss or damage to shipments, with a suit by a carrier, for the collection of transportation charges including demurrage or freight charges. This contention is without merit in view of the ruling in Chicago & N. W. R. v. Lindell, 281 U.S. 14, 50 S.Ct. 200, 201, 74 L.Ed. 670, wherein the Supreme Court, in holding that shippers might properly determine claims for loss or damage in suits brought by carriers to collect transportation charges, stated: "The practice of determining claims of shippers for loss or damage in suits brought by carriers to collect transportation charges is not repugnant to the rule prohibiting the payment of such charges otherwise than in money. The adjudication in one suit of the respective

claims of plaintiff and defendant is the practical equivalent of charging a judgment obtained in one action against that secured in another. Neither is to be distinguished from payment in money."

The plaintiff argues that the cited case must be strictly construed and restricted in its application to circumstances based on the law of procedure existing in the State of California. In this court's opinion the words of the Supreme Court in the Lindell case, supra, do not permit of so circumscribed or restricted an interpretation, but contrarily, effectively establish the right of the shipper to diminish or defeat the carrier's claim by means of counterclaim for loss or damage. To the same effect see 13 C.J.S., Carriers, § 318, page 759.

■ The suit was originally filed by the plaintiff for the recovery of demurrage charges arising from the alleged detention of certain tank cars. In support of his motion for summary judgment, the plaintiff has submitted proof by way of affidavits, documents and records, with which he seeks to prove that there is no genuine issue as to any material fact. This asserted proof is met by the defendant with equally effective affidavits and with certain documents and calculations that purportedly are prepared from records maintained by the defendant, of fuel oil deliveries received from the plaintiff. The discrepancies in the proofs offered by the parties are at once apparent. The defendant has entered a general denial and, if the proofs are to be believed, has stated a good defense. The proofs offered are of equal probative value. This court may not conclude therefore that there is no genuine issue of fact, nor may we assume to decide issues.

■ The court's function on this motion is solely to determine whether there is a genuine issue of fact, and, having concluded that there is such genuine issue as to material facts in so far as the alleged demurrage charges are concerned, summary judgment as a matter of law may not be entered. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016.

In addition to denying liability for alleged demurrage charges, the defendants assert as an affirmative defense to such

charges, the agreement alleged to have been made by plaintiff with defendants whereby it allegedly was agreed that in consideration of defendants not making a claim against or filing suit against plaintiff for losses caused by plaintiff's negligence and delays in delivery of tank cars of fuel oil, plaintiff agreed not to make a claim for or sue for any charges due for demurrage.

The defense is without merit and will not be allowed. An agreement such as that asserted by the defendant is void as against public policy and is in breach of the inhibitions of the Interstate Commerce Act, which provides in section 6, paragraph 7, 49 U.S.C.A. § 6(7), in part, as follows: "§ 6(7) Transportation without filing and publishing rates forbidden; rebates; privileges. No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs.

Neither may the agreement be set up by the consignee as an estoppel against the carrier, precluding the collection of the full amount of transportation charges. Thus, the Supreme Court in Pittsburgh etc. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 28, 63 L.Ed. 1151, in referring to the section above quoted said: "It was, therefore, unlawful for the carrier upon delivering the merchandise consigned to (the defendant) to depart from the tariff rates filed. The statute made it unlawful for the carrier to receive compensation less than the sum fixed by the tariff rates duly filed. (The defendant) as well as the carrier, must be presumed to know the law, and to have understood that the rate charged could lawfully be only the one fixed by the tariff."

The court in the Fink case then stated further: "Nor can the defendant in error successfully invoke the principal of estoppel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the Act as to equal rates, in violation of the provisions of the statute."

To the same effect and particularly apropos are the words of the Court in Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 442, 68 L.Ed. 900: "No contract of the carrier could reduce the amount legally payable, or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

What has been said above applies as well to demurrage charges as to other transportation charges since demurrage charges are part and parcel of the transportation charges and are covered by the same rules of law.

"They are a part of the tariff, and must be collected from the shipper or the consignee of the freight to the same extent as the charge for carriage. A penalty is imposed on the carrier for failure to collect." Davis v. Timmonsville Oil Co., 4 Cir., 285 F. 470, 472. See also Hooper-Mankin Fuel Co. v. Chesapeake & O. R. Co., 4 Cir., 30 F.2d 500; Pennsylvania R. Co. v. Carolina Portland Cement Co., 4 Cir., 16 F.2d 760.

The defendants by counterclaim have asserted two causes of action for affirmative relief. The first count of the counterclaim charges that during the months of February and March, 1943, as a result of plaintiff's negligence in failing to maintain adequate equipment for delivery of defendants' cars to their siding and as a re-

sult of negligence in permitting their (the plaintiff's) switches to become frozen so that said cars could not be delivered to the sidings, causing delay in the aforesaid deliveries, the defendants lost the sales of approximately 40,000 gallons of fuel oil per day, wherefore damages are sought.

In answer to the first count of defendants' counterclaim, plaintiff asserts by way of defense (1) that the counterclaim fails to state a cause of action, and (2) generally denies the allegations therein contained. Taking the second argument first, the plaintiff in support thereof asserts that the contentions of the counterclaim are conclusively refuted by plaintiff's answering affidavits. The answering affidavits do not, however, establish conclusively that there is no genuine issue as to any material fact but conversely they establish the contrary to be the fact and thereby preclude summary judgment.

Of more compelling force is plaintiff's argument that the said count fails to state a cause of action on the ground that defendants have failed to comply with the requirements of the bills of lading applicable to the shipments there involved. The terms and conditions provide inter alia: "Sec. 2(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

No such claims in writing, as are provided for in Sec. 2(b) above, have been filed and plaintiff urges that defendants on that account are barred from asserting their claim. In reply, defendants urge that the plaintiff is equitably estopped from claiming its alleged protection under the quoted section of the bills of lading on the ground that all action the defendants would have taken for the recovery of moneys allegedly due them because of plaintiff's asserted negligence had been halted by the fraudulent representations by plaintiff to the effect that defendants would be relieved of demurrage charges if they would forego their claim for deferred deliveries.

The failure to file written claims which, under section 2(b) above quoted, are a condition precedent to recovery for loss or damage as a result of delay, seems to the court effectively to bar the assertion of any such claim by the defendants at this late date. Defendants' argument that the plaintiff is estopped from raising the defense of failure to file a written claim is without avail in a case of this particular nature. The asserted estoppel is based upon a special agreement under which the defendants were to be relieved of any liability to pay demurrage charges. In effect, such an agreement would give an advantage or preference not open to all, and not provided for in the published rates, and as such it was illegal. Supra. Demurrage charges are part of the tariffs. For the purposes of this motion, defendants are presumed to have known what those tariffs were. Chicago & Alton R. v. Kirby, 225 U.S. 155, 32 S.Ct. 648, 56 L.Ed. 1033. They may not now be heard to complain. Moreover, the Supreme Court in Texas & Pacific R. Co. v. Leatherwood, 250 U.S. 478, 481, 39 S. Ct. 517, 518, 63 L.Ed. 1096, has specifically stated that "a carrier cannot be prevented by estoppel or otherwise from taking advantage of the lawful rate properly filed under the Interstate Commerce Act."

In the same case it was stated as well that "the parties to a bill of lading cannot waive its terms nor can the carrier, by its conduct, give the shipper the right to ignore them." To the same effect are the holdings in Pittsburgh R. Co. v. Fink, supra, and Louisville & Nashville R. Co. v. Central Iron & Coal Co., supra.

In view of the above, it is my conclusion that defendants' failure to file written claims as provided, now effectively bars them from asserting this claim for damages.

 The second count of defendants' counterclaim sounds in tort and charges that on or about October 7, 1943, the plaintiff delivered to defendants an 8000 gallon tank car full of oil, representing that the said oil was fuel oil belonging to defendants when in fact the oil delivered was consigned to the United States Navy. There is the further charge that the navy oil was of a different composition than the fuel oil used by defendants, and when that oil was mixed with the fuel in defendants' tank, it adulterated it, so damaging it that it could not be sold. The damages sought are for the losses suffered as a result of such adulteration.

In answer, plaintiff denied the allegations of the second count and counterclaimed, seeking damages against the defendants for the conversion of the oil consigned to the navy as well as for the freight and transportation charges.

In so far as the second count of defendants' counterclaim is concerned, the defendants are not barred from asserting the claim for damages at this time. The claim by defendants is one sounding in tort. No bill of lading was issued to defendants relative to the car of navy oil here involved and there is, therefore, no bar to the action arising out of a contractual relationship between the parties.

In opposition to plaintiff's counterclaim, defendants argue that, taken in its best light, the plaintiff is a joint tort-feasor and seeks to invoke the rule that there is no contribution between joint tort-feasors. On this point the court makes no determination.

At this posture of the case, the Court will not attempt, indeed it may not, to determine the degree or degrees of guilt or wrong conduct of the parties to the latter counts of this action. That there is a factual dispute and that there is a genuine issue of fact, seems in no doubt. Summary judgment, therefore, may not properly enter.

In so far as the first count of defendants' counterclaim is concerned, the court's conclusion is that the failure to comply with the statutory requirement that a written claim be filed within nine months after delivery of the property, effectively bars such claim. Plaintiff's motion for summary judgment on the remaining issue is denied.