**GOLIGER TRADING CO. OF NEW YORK v. CHICAGO & N. W. RY. CO.**

No. 9887.

United States Court of Appeals
Seventh Circuit.

Oct. 11, 1950.

Lawrence E. Fleischman, Chicago, Ill., for appellant.

Lowell, Hastings, Drennan J. Slater, Edward Warden, Edgar Vanneman, Jr., all of Chicago, Ill., for appellee, Nelson Trottman, Chicago, Ill., of counsel.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal from a judgment entered upon a directed verdict in favor of the defendant. While numerous reasons were assigned by the defendant in support of its motion for a directed verdict, the record does not disclose the particular ground upon which the court allowed the motion. However, in a colloquy between court and counsel it is indicated that the action was predicated upon two grounds, (1) that there was no proof of the negligence charged against the defendant, and (2) no competent proof of the damages alleged.

Plaintiff sought to recover because of defendant's failure to deliver promptly a car of pelts which were shipped on August 30, 1946, from the premises of Darling & Company, Chicago Union Stock Yards, 4201 S. Ashland Avenue, Chicago, to the National Wool Pulling & Scouring Company, located at 1716 Webster Avenue, Chicago, a distance of approximately eight miles. The shipment arrived at the latter place some eight days later, to wit, September 6, 1946. (Within this time was included a Saturday, Sunday and Monday, Labor Day.) The complaint alleged that Darling & Company loaded the pelts into defendant's railway car MP 85671, in accordance with plaintiff's instructions, and that defendant issued its "Uniform Straight Bill of Lading" on such shipment. A copy of said bill of lading was attached to the complaint and made a part thereof.

Plaintiff in its brief insists, "This is not a suit for 'delay.' This is an action for loss and damage to a carload of 'pelts' delivered by defendant carrier in a spoiled and deteriorated condition." This contention is made although it appears that the case was tried in the court below on the theory that defendant's delay was responsible for the damages alleged and it could not well have been tried on any other theory in view of the complaint. The sole allegation pertaining to negligence is as follows: "The loss and damage aforementioned was due to the careless and negligent handling of the car of pelts by the Defendant Railroad in that said Defendant did consume eight days in transporting said car from the place of business of Darling & Company to the place of business of the National Wool Pulling and Scouring Company, both of which firms are located in the City of Chicago, Cook County, Illinois."

The defendant by its answer denied that any part of the loss or damage sustained was due to its carelessness or negligence, denied that the period of eight days consumed in transporting such car was excessive under the circumstances, and denied that it issued any bill of lading on such shipment but alleged that said bill of lading was issued by the Stock Yards District Agency for the account of Chicago Junction Railway Company.

The sole evidence offered as proof of defendant's negligence consisted of the time, place and condition of the pelts at the time they were loaded, together with a description of the railroad car in which they were loaded, and the time, place and their condition at the time they were delivered to the consignee by the defendant. While, as stated, plaintiff attached to its complaint and made a part thereof a copy of the bill of lading issued on said shipment, the same was not offered in evidence. And also as stated, its issuance was denied by the defendant in its answer. Under such circum-

stances, it has been held that the plaintiff cannot rely upon the bill of lading. American Fruit Growers, Inc., of Illinois v. San Antonio & Aransas Pass Railway Co., 239 Ill.App. 151, 154; Wood & Co. v. Illinois Central R. Co., 240 Ill.App. 6, 8. Furthermore, it was shown by plaintiff's evidence that the pelts were loaded in a car located on the tracks of the Chicago Junction Railway Company.

 In the absence of the introduction of the bill of lading, it is evident that it is of no assistance to plaintiff's case, regardless of whom it was issued by. It is also evident under the record presented that the Chicago Junction Railway Company must be considered as the initial carrier and the defendant as a connecting and the terminal carrier. Whether there were any intervening connecting carriers the record does not disclose. Moreover, we doubt, although we need not decide, that it makes any difference on the question of liability whether defendant was the initial carrier, as alleged by the plaintiff but not proven, or whether it was a connecting and terminal carrier. This is so for the reason that in any event the shipment was intrastate and the question of defendant's liability must be determined in accordance with the common law as distinguished from the liability of carriers engaged in an interstate shipment as provided by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20(11, 12).

 While we shall not attempt to discuss or reconcile the numerous Illinois cases relied upon, most of which are by the Appellate Court, we think it will be helpful to refer to two Illinois Supreme Court cases. While both of these cases were brought under the Carmack Amendment, they are pertinent because they distinguish and point out the added liability of carriers under that amendment in contrast to their liability under the common law. In Alton Iron & Metal Co. v. Wabash Railway Co., 328 Ill. 353, 159 N.E. 802, the defendant was a connecting and terminal carrier of an interstate shipment. The court, after pointing out in 328 Ill. at page 355, 159 N.E. at page 803 that the shipments were interstate and the rights and liabilities of the parties governed by Federal statutes, stated, "At common law a connecting or terminal carrier was liable only for loss or damage to property in its custody resulting from its own acts or omissions. Pennington v. Grand Trunk Western Railway Co., 277 Ill. 39, 115 N.E. 170. Prior to the passage of the Carmack amendment the Federal rule was that each carrier in an interstate shipment, in the absence of a special contract to the contrary, was only bound to safely carry the goods over its own line and safely deliver them to the succeeding carrier." Furthermore, the court, 328 Ill. at page 356, 159 N.E. at page 803, referring to two of its previous decisions, stated, "The court held in these two cases that the Carmack Amendment modified the common-law liability of the initial carrier, only, and rendered that carrier liable not only for damage to the property while in the possession of the initial carrier, but also rendered the initial carrier liable for damage occasioned by any connecting carrier; that the connecting carrier was not relieved from liability by the amendment for negligence or loss occasioned upon the line of the connecting carrier and due to the negligence of the connecting carrier * * *." And the court stated in 328 Ill. at page 359, 159 N.E. at page 804, "The only liability of the appellant as a connecting carrier was for its own negligence or default. * * * There is an entire absence of any evidence showing, or even tending to show, any negligence or default on behalf of appellant in the handling of the shipments. For this reason the court should have entered a judgment in favor of appellant."

Pennington v. Grand Trunk Western Ry. Co., 277 Ill. 39, 115 N.E. 170 (cited in the Alton Iron and Metal Co. case from which we have just quoted), is the only Supreme Court case cited by plaintiff in which the negligence alleged was predicated upon delay. There, an interstate shipment was involved and the defendant was the connecting carrier. The Appellate Court reversed a judgment which the plaintiff had obtained in the trial court on the ground that the shipper's right under the Carmack Amendment was solely against the initial carrier. The Supreme Court reversed this

holding, and in so doing stated in 277 Ill. at page 42, 115 N.E. at page 171: "However, every carrier connected with an interstate shipment is liable for damage or loss to the property so received or transported, caused by its own negligence. * * * Where the suit is against a connecting carrier, and not against the initial carrier, of an interstate shipment, it is incumbent upon the plaintiff to allege and prove that the loss and damage to his shipment were caused by the negligence of the defendant according to the law in existence prior to the enactment of the Carmack Amendment."

Wood & Co. v. Illinois Central R. Co., 240 Ill.App. 6, also involved an interstate shipment and it was held, as above shown, that the plaintiff could not recover under the Carmack Amendment for failure to introduce the bill of lading and also that it could not recover under the common law because "it failed to sustain such a cause of action in the absence of making any proof that the loss or damage occurred on its line or through its neglect."

These cases, while based on the Federal Act, are in point because they clearly show that the liability of a connecting carrier has not been changed by the Carmack Amendment but that such carrier may be liable under the common law but only for its own negligence. Plaintiff is in the unfortunate position of having proceeded on the theory that defendant was the initial carrier and, therefore, liable under the Federal law. This theory, as shown, is not tenable for the reason that under the record as made the defendant must be treated as a connecting carrier, and in any event, the Federal law would be without application because the shipment was not interstate.

Thus, if plaintiff is permitted to prevail, it must be upon defendant's common law liability as a connecting carrier. The question then presented is what, if any, negligence was proven against the defendant. While the cases in Illinois where negligence caused by delay is relied upon are not numerous, such as they are support defendant's contention that proof of mere delay although such delay results in damage to the goods and loss to the shipper is not sufficient. In Adams Express Co. v. Bratton, 106 Ill.App. 563, 570, the court stated, "Now, the law undoubtedly is, that the common law duty of carriage is to safely transport and safely deliver within a reasonable time. Before there can be a breach of this duty, a mere delay is wholly insufficient to create a liability. It must be 'an unreasonable delay, which is such as involves some want of ordinary care or diligence' on the part of the carrier." And the court quoted from Chicago & A. R. Co. v. Simms, 18 Ill.App. 68, as follows: "The reasons upon which the extraordinary responsibility of the common carrier for the safety of the goods is founded, do not require that the same responsibility should be extended to the time occupied in their transportation."

In Murphy v. Illinois Central R. Co., 238 Ill.App. 553, the court quoted with approval the above quotations from the Adams Express and Simms cases. In the Murphy case, the court, 238 Ill.App. at page 559, also held insufficient the proof offered by the plaintiff "to establish the usual and customary time" in which the involved shipment should have been transported. To the same effect is Leonard Seed Co. v. Cleveland, C. & St. L. R. Co., 162 Ill.App. 190, wherein it is stated in a headnote, "Delay in transporting merchandise must be established by testimony showing that the time consumed in carriage was in excess of that which should have been taken under the conditions which prevailed upon the road of the carrier to whom the merchandise was entrusted. Evidence as to the time required to transport merchandise between the same points upon a different road is incompetent."

In the instant case there is not a scintilla of proof as to the reasonable and customary time required to make a shipment between the points involved. More than that, there is no proof as to when the car was delivered to the defendant. For aught that appears, all the alleged delay might have been—in fact, could well have been—before the car was delivered to the defendant.

Plaintiff urges that we should take judicial notice that the time consumed in making the shipment in question was

so unreasonable as to constitute negligence and that the burden was upon the defendant to show that it was not a party to such delay, or, in other words, that the delay had occurred before the car was delivered to it. While the contention that the time consumed was unreasonable appears plausible, we think it cannot be so treated without proof for two reasons: First, in view of the authorities which we have cited we think the law is that the burden is upon the plaintiff to make at least some proof of such unreasonable delay as to constitute negligence, and more than that, inasmuch as it clearly appears from the authorities that a connecting carrier is only liable for its own negligence, there must be proof that it was responsible for such unreasonable delay. Second, we think, as did the court below, that it would be a hazardous business for a court to assume or take judicial notice of the usual and customary time required to transport goods and this, of course, would be necessary before we could say the delay was unreasonable.

True, plaintiff cites numerous cases where it has been held that proof of the delivery of goods to a carrier in a good condition and the delivery to a consignee in a deteriorated condition raises a prima facie case which is subject to be rebutted by the carrier. Not a one of these cases, however, so far as we are aware, is predicated upon negligence arising from delay. They are predicated generally on the theory that the reason for damage to goods while in the possession of the carrier is not known to the shipper and that some burden should be placed upon the carrier who ordinarily is in a better position to account for such damage. Such reasoning, however, is not applicable to a situation such as we have here where negligence is predicated solely upon the time consumed in making the transportation, because in this and similar cases it would be a simple matter for the shipper to prove by railroad men, shippers or others who have had experience in making similar shipments between the points involved as to what would be the reasonable and customary time required.

We conclude that the plaintiff failed to prove the negligence which it alleged against the defendant and that the motion for a directed verdict was properly allowed. Whether the motion should also have been allowed because of a failure to offer any competent proof as to the measure of damages need not be decided. Other contentions made by the plaintiff in an effort to obtain a reversal are without merit.

The judgment appealed from is affirmed.