**PETER KIEWIT SONS' CO. and J. A. Park Machinery Co., Plaintiffs,**

v.

**COLORADO & SOUTHERN RAILWAY COMPANY, Defendant.**

Civ. A. No. 7086.

United States District Court
D. Colorado.

Oct. 26, 1961.

Stockton, Linville, Lewis & Mitchell, William D. Mitchell, Denver, Colo., for plaintiffs.

John C. Street and Willard L. Peck, Denver, Colo., for defendant.

DOYLE, District Judge.

The Complaint herein describes distinct claims on behalf of Kiewit and Park. The former is alleged to be the prime contractor engaged in constructing a bridge at Thompson Falls, Montana; the Park Company is alleged to be a subcontractor which had undertaken to erect structural steel on the same project.

The defendant is alleged to have negligently damaged a shipment of structural steel which had been marked and fitted for use on the described project. Special damages to each of the plaintiffs are set forth and these involve the delay resulting from the damage, the consequence of which was removal of other parts, and transportation back to the fabricator so that they could be properly fitted. These special damages are described in Exhibits "A" and "B" attached to the Complaint.

The defendant removed the case on March 31, 1961, claiming that the action had arisen under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and that the cause was one in respect to which the United States District Court would have original jurisdiction. Pursuant to this motion the cause was removed to this Court and thereafter plaintiffs filed their motion to remand.

This motion recites that the claims do not arise under the Constitution, treaties, and laws of the United States and that the cause should not, therefore, have been removed.

Defendant relies on Title 28 U.S.C. § 1441(b) which provides that any action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable. Title 28 U.S.C. § 1337 declares that the district court shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce.

The so-called Carmack Amendment of the Interstate Commerce Act [Title 49 U.S.C.A. § 20(11)] subjects the initial carrier of goods to liability to the lawful holder of a receipt or bill of lading for loss, damage or injury to such property caused by the initial carrier, or any other carrier to which the property may be delivered over whose line property may pass. Defendant's argument is that the Carmack Amendment applies to all carriers and subjects them to liability directly or indirectly, and thus that any action against the carrier predicated upon alleged damage to goods or freight must of necessity invoke the provisions of the Carmack Amendment and is, therefore, within the scope of 28 U.S.C. § 1337 and § 1441(b) and (c).

The inquiry is, therefore, whether the Carmack Amendment has preempted the entire field of remedies by shippers against carriers so that under any and all circumstances an action asserted against a carrier alleging damage to goods and consequent special damages must fall within the terms of the Carmack Amend-

ment, whether it is expressly invoked or not.

It is noteworthy, of course, that the Complaint does not purport to be based on any federal statute—it merely alleges that plaintiff Kiewit was the consignee of the fabricated structural steel in question and that the defendant, while transporting the shipment, carelessly and negligently damaged it.

A further allegation is that defendant knew, or should have known, that the shipment was part of a series since it had carried previous shipments and presumably could, therefore, have foreseen the special damages which were suffered. The plaintiff Park is not, of course, either a shipper or consignee of the goods in question and its claim is based upon the consequential delays and the expense which resulted from these delays. Defendant contends, however, that it makes no difference whether the statute is expressly invoked or not; that it comes in play automatically.

It may be that under allegations which spell out a claim based on the Carmack Amendment this would be true. If, however, claims can possibly be set forth which arise under the common law, or which have other sources, it would follow that removal would not be proper where there had been no express pleading of a federal statute such as the Carmack Amendment. See 1 Moore's Federal Practice, 630. The author indicates that the Complaint should be tested by referring to its allegations and not by reference to the Petition for Removal or the defendant's answer. See also Peyton v. Railway Express Agency, Inc., 316 U.S. 350, 62 S.Ct. 1171, 1173, 86 L.Ed. 525. Here the Court said:

> "Whether a suit arises under a law of the United States must appear from the plaintiff's pleading, not the defenses which may be interposed to, or be anticipated by it."

The present motion could be granted on the basis that the Complaint describes common-law actions thus indicating its desire to stand or fall on the existence of a nonstatutory (federal) right. However, we consider further inquiry appropriate. Is there a possible remedy such as that described in the Complaint, or is defendant correct in its contention that the Carmack Amendment has undertaken to regulate all possible recovery in this field? If the Amendment has preempted this field then the plaintiffs would have no action other than that prescribed by the statute and the consequence would be that the right would depend on the statute and the claim would have to arise under the statute or not at all.

Some of the cases give the impression that the Amendment sets up exclusive remedies and that the shipper must pursue his remedy against the initial carrier. See Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 152, 57 L.Ed. 314, and Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S. Ct. 541, 60 L.Ed. 948.

The Adams Express Co. case contains broad language. "That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character." It is important to note however that the Court was dealing with a controversy involving the consignor of a package against the initial carrier and the question was whether there could be a regulation limiting liability valuewise. That case also describes the effect of the Carmack Amendment as subjecting the initial carrier to liability for loss of goods based on the waybill and extending to carriers to which the goods are delivered.

The broad language of the Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co. decision arises in a somewhat similar setting. Neither decision holds that there can be no other action against an intermediate carrier seeking damages which are beyond the scope of the Carmack Amendment.

The Amendment itself does not suggest any such result. It has a protective clause preserving to the holder of a bill of lading any remedy "which he has under the existing law." See John Lysaght,

Ltd. v. Lehigh Valley R. Co., D.C., 254 F. 351, 353. The Amendment makes no mention of possible remedies against the intermediate carrier although the protective or preservation clause would apply to Kiewit as the holder of a bill of lading.

The other cases on which the defendant relies, including Peyton v. Railway Express Agency, Inc., supra, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 525; Great Northern Railway Co. v. Galbreath Cattle Co., 271 U.S. 99, 46 S.Ct. 439, 70 L.Ed. 854; Alabama Great Southern Ry. Co., et al. v. American Cotton Oil Co., 5 Cir., 229 F. 11, McGoon v. Northern Pacific Ry. Co., D.C., 204 F. 998, and Lehigh Valley R. Co. v. Allied Machinery Co. of America, 2 Cir., 271 F. 900, do not deal with the present problem; at least, they do not consider whether a right to recover consequential damages can be prosecuted under state law. However, the exact issue is presented and is discussed in Erisman v. Chicago, B. & Q. R. Co., 180 Iowa 759, 163 N.W. 627, 629. Although not a removal case, the Iowa Court considered our present narrow issue whether the Carmack Amendment undertook to establish remedies which excluded all common-law remedies. The Iowa Court first noted that the amendment did not, either expressly or by implication, exempt the terminal or any other carrier from liability. The Court continued:

"The object of the act was to settle the law applicable to interstate commerce, which theretofore had been in considerable confusion as to the liability of initial carriers in the shipment of goods in interstate commerce, and to make it responsible for the acts of all connecting carriers (thus making these connecting carriers its agents); and also to provide a statutory rule permitting recovery back by the initial carrier from the company, on whose line the loss, damage, or injury was sustained, of the amount of the loss or damage. The statute was aimed at initial carriers, and was not intended to apply to connecting or terminal ones, save as it made them responsible to initial carriers for damages occurring on their own lines. No cases have been cited which hold that there is no remedy against a connecting or terminal carrier, and we do not think any can be found. The cases cited clearly settle the liability of terminal carriers."

The Court then went on to inquire as to the basis of liability of a terminal, or connecting carrier, and concluded that in the absence of a statute (federal), it would be state common law, or statutory, and added:

"So that the liability of connecting and terminal carriers, except in the instances named in the Carmack Amendment, is given by the common law, and that law has always been recognized and enforced by the federal courts, and is in harmony with the common law of the several states. (Citing cases) But for the adoption of the Carmack Amendment, it would not be contended that an action to . enforce liability against a terminal carrier would not lie, even were there no statute or state decision upon the subject."

■ The discussion in Goliger Trading Co. of New York v. Chicago & N. W. Ry. Co., 7 Cir., 1950, 184 F.2d 876, 880, is consistent with the view which we here adopt, i. e., that the connecting carrier, notwithstanding the Carmack Amendment, continues to be liable under common law for its own negligence. The Court there stated:

"These cases, while based on the Federal Act, are in point because they clearly show that the liability of a connecting carrier has not been changed by the Carmack Amendment but that such carrier may be liable under the common law but only for its own negligence. Plaintiff is in the unfortunate position of having proceeded on the theory that defendant was the initial carrier and, therefore, liable under the Federal law. This theory, as shown, is not tenable for the reason that under

the record as made the defendant must be treated as a connecting carrier, and in any event, the Federal law would be without application because the shipment was not interstate."

In holding that the motion to remand should be granted, we do not undertake to evaluate the plaintiffs' claims. The granting of the motion before us does not require any such action. We are merely holding that the Carmack Amendment does not exclude every possible remedy so that regardless of the allegations of plaintiffs' complaint, the claim would have to be held to arise pursuant to federal statute. On the basis of this conclusion it follows that the removal was not proper and that the motion to remand should be granted; and

It is so ordered.