406 F.2d 731
 MARQUETTE CEMENT MFG. CO., and Chattanooga Rock Products Div'n of Vulcan Materials Co., Plaintiffs-Appellants,
v.
The LOUISVILLE & NASHVILLE R. R. Co., Defendant-Appellee. CO., Defendant-Appellee.
MARQUETTE CEMENT MFG. CO., and Chattanooga Rock Products Div'n of Vulcan Materials Co., Plaintiffs-Cross-Appellees,
v.
The LOUISVILLE & NASHVILLE R. R. CO., Defendant-Cross-Appellant.
 No. 18298.
 No. 18299.
 United States Court of Appeals Sixth Circuit.
 February 6, 1969.
 
 James W. Gentry, Jr., Chattanooga, Tenn., Witt, Gaither, Abernathy & Wilson, Chattanooga, Tenn., on brief, for Marquette Cement and others.
 William D. Spears, Chattanooga, Tenn., Spears, Moore, Rebman & Williams, Chattanooga, Tenn., Eugene W. Herde, Louisville, Ky., on brief, for L & N R.R.
 Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This cause is before the Court upon the appeal of Marquette Cement Manufacturing Company and the cross-appeal of The Louisville and Nashville Railroad Company from a judgment entered in the United States District Court for the Eastern District of Tennessee, Southern Division, on September 29, 1967. The judgment awarded damages to Marquette, plaintiff in the District Court, in the sum of $1,499.26 against The Louisville and Nashville Railroad Company, defendant therein. The case was tried to District Judge Frank W. Wilson upon a stipulation of facts. On this appeal, Marquette charges that the judgment was inadequate and the L & N urges that it was excessive.
 
 
 2
 Vulcan Materials Company, a customer of Marquette, operated two manufacturing plants in Chattanooga, Tennessee. One, Chattanooga Rock Products Division, was located at 2001 Rossville Boulevard, and the other, Concrete Pipe Division, was located at 1111 Oak Street. Rock Products manufactured only ready-mix concrete; Concrete Pipe manufactured only concrete pipe. Marquette regularly sold and shipped cement made by it to the two Chattanooga plants of Vulcan Materials. The cement made for the Pipe Division was known as "air-entrained," because air was introduced into it in the process of manufacture. Such "air-entrained" cement was suitable for use in making concrete pipe, but not for Rock Products' production of ready-mix concrete.
 
 
 3
 Marquette, as shipper, prepared the bill of lading for a carload of air-entrained cement ordered by Vulcan for its Concrete Pipe Division. The consignee was properly identified as "Vulcan Materials Co., Conc. Pipe Div." at its Oak Street address. The commodity was also properly described as "air-entrained cement." The route of the carriage was given as "L & N, C of Ga." — Louisville and Nashville and Central of Georgia. This was erroneous because Concrete Pipe Division of Vulcan was not on the route of the Central of Georgia, but its ready-mix plant was. The Concrete Pipe Division plant was on the tracks of the Southern Railway, and shipments from Marquette came to it via the Louisville and Nashville and the Southern Railway. Noting that the routing of the involved shipment was Central of Georgia whereon the ready-mix concrete plant was located, Louisville and Nashville's clerk in Chattanooga changed the address of the consignee on the bill of lading to direct the shipment to Vulcan's ready-mix plant.
 
 
 4
 Upon such delivery, the cement was used by the ready-mix plant in manufacturing concrete. "Air-entrained" cement was not suitable for such use, but on sight it is not distinguishable from regular cement. At the time of its use, the bill of lading with its advice that the shipment was "air-entrained cement" had not yet arrived. The batch of ready-mix concrete, so made, was defective, but such defect was not discernable upon visual inspection. The defective concrete was delivered to two of Vulcan's customers. Floors made by these customers had to be taken up and replaced by Vulcan at a cost of approximately $10,000, for which Vulcan was reimbursed by Marquette.
 
 
 5
 Marquette brought suit against the defendant railroad for the amount of Vulcan's liability to its customers. Plaintiff also asked to recover the value of the carload of cement which was lost, prepaid freight charges, and an amount paid to a laboratory for testing the cement. Suit was brought under the so-called Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. § 20(11). Upon his interpretation of such statute and other relevant law, the District Judge held that the plaintiff's damages were limited to the value of the cement shipped, $1,408.16, and the freight charges of $91.10, and gave judgment to Marquette for $1,499.26. He held that the other claims were made up of special damages for which the railroad could not be made to respond.
 
 
 6
 Additional facts and discussion of applicable law are set out in the opinion of the District Judge, reported as Marquette Cement Mfg. Co. v. Louisville and N. R. Co., 281 F.Supp. 944 (E.D.Tenn. 1967). We consider that the opinion adequately discusses the legal questions involved and arrives at the right conclusion.
 
 
 7
 Judgment affirmed.