AMERICAN SYNTHETIC RUBBER COR-
PORATION and American Rubber &
Chemical Company, Plaintiffs-Appel-
lants,

v.

LOUISVILLE & NASHVILLE RAIL-
ROAD COMPANY, Defendant-
Appellee.

No. 19153.

United States Court of Appeals,
Sixth Circuit.

Feb. 18, 1970.

Hubert T. Willis, Louisville, Ky., O. Grant Bruton, Louisville, Ky., on the brief, for appellants.

Joseph E. Stopher, Louisville, Ky., A. J. Deindoerfer, Louisville, Ky., Joseph L. Lenihan, Eugene W. Herde, David M. Yearwood, Louisville, Ky., on the brief, for appellee.

Before EDWARDS and COMBS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

COMBS, Circuit Judge.

This action arose out of the misdelivery of a shipment of chemicals by the Louisville & Nashville Railroad, and the subsequent mixing of that shipment's contents with other chemicals by the consignees in their plant facilities. A complaint for damages based on breach of contract and negligence was originally filed against L & N in a Kentucky state court by the consignee, American Synthetic Rubber Corporation, and its affiliate, American Rubber & Chemical Company. The L & N removed the action to federal district court, contending that it arose under the Carmack Amendment, 49 U.S.C. § 20(11), and was therefore removable under 28 U.S.C. §§ 1337, 1441(a), and 1445(b). The district court denied plaintiff's motion to remand in an opinion reported at 291 F. Supp. 723. The L & N then moved for summary judgment. That motion was granted on the ground that plaintiffs had not filed a claim in writing with defendant L & N within nine months as required by section 2(b) of the bill of lading.

The facts are undisputed. In February, 1966, American Synthetic ordered several tank carloads of the chemical butadiene. The carload in question was shipped from Houston, Texas, via the Missouri Pacific Railroad on March 23, 1966, and arrived in Memphis, Tennessee, on March 27. That carload, numbered GATX 84196, was then transferred from the Missouri Pacific to the L & N pursuant to the bill of lading. Defendant L & N had contracted to transport the shipment from Memphis to Louisville, Kentucky, where a Louisville belt line company, K & I, would receive the shipment for later delivery to plaintiffs' Louisville plant.

On March 27, the L & N also received from the Missouri Pacific at Memphis a carload of ethylene oxide, numbered GATX 84796, destined for Olin Mathieson at Doe Run, Kentucky, approximately forty miles from Louisville. The waybills which outlined the routes for these two shipments were interchanged by L & N personnel in Memphis. As a result, L & N delivered the carload of ethylene oxide to K & I on March 29, along with documents identifying the shipment as butadiene, GATX 84196. Conversely, the butadiene was first delivered to Olin Mathieson although four days later it was delivered to and accepted by plaintiffs.

On March 31, American Synthetic ordered K & I to deliver the carload of butadiene, numbered GATX 84196, in conformance with the bill of lading which American Synthetic then had. When K & I later informed plaintiffs that there was no car numbered GATX 84196, but

one numbered GATX 84796, K & I was told to deliver that one since it probably was the same car. Car number GATX 84796 was plainly labeled *ethylene oxide* and carried "dangerous" placards. Nevertheless, upon arrival at the plant, it was unloaded by plaintiffs' employees into facilities for butadiene. The resulting damages were extensive.

After receiving notice that an error had occurred in routing these shipments, L & N officials visited plaintiffs' plant on April 4, 1966, to investigate the circumstances surrounding the misdelivery of the carload of ethylene oxide. According to the affidavit of the president of American Synthetic, these officials were then made aware that damage was being claimed on account of the misdelivery although the extent of the damage had not been ascertained. It is said in the affidavit that L & N officials acknowledged the existence of plaintiffs' claim and admitted liability. At that time, two documents presented to the L & N representatives recited, in essence, that the railroad had made a misdelivery in that ethylene oxide had been delivered rather than butadiene. After these documents, which were essentially business records, had been examined on the spot by the L & N officials, they were handed back to the American Synthetic representatives. On January 20, 1967, more than nine months after this meeting, plaintiffs submitted a "Memorandum of Facts" to defendant, outlining the extent of the damages.

The initial question is whether the district court correctly held that the Carmack Amendment, 49 U.S.C. § 20(11), 34 Stat. 595 (1906), is applicable to the factual situation outlined above. If so, the case is within the original jurisdiction of the federal courts, and admittedly was properly removed from the state court under 28 U.S.C. §§ 1337, 1441(a), and 1445(b). A second question is whether the notice of claim was sufficient under § 2(b) of the bill of lading.

The Carmack Amendment provides in pertinent part:

"Any * * * railroad * * * receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier * * * to which such property may be delivered or over whose line or lines such property may pass * * * or any * * * railroad * * * delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading * * * for the full actual loss, damage, or injury to such property caused by it or by any such common carrier * * * to which such property may be delivered or over whose line or lines such property may pass * * * *And provided further,* That * * * the delivering carrier shall be construed to be the carrier performing the line-haul service nearest to the point of destination and not a carrier performing merely a switching service at the point of destination * * * *."

In contesting the applicability of the Carmack Amendment, plaintiffs-appellants point to the words "loss, damage or injury to such property," contending that the statute comes into play only where damages are sought for delay, loss, damage, or injury to the shipment itself. Relying on this premise, appellants maintain that, since the shipment of butadiene was delivered intact, the Carmack Amendment does not apply, and therefore their suit for damages caused by the delivery of the carload of ethylene oxide was improperly removed to district court. The railroad, however, takes a broader view of the Carmack Amendment, contending that it applies to any cause of action arising by virtue of a breach of an interstate contract of carriage. It is argued that the delivery of ethylene oxide instead of butadiene breached the interstate contract of carriage so that an action for damages oc-

casioned by that breach necessarily arose under the Carmack Amendment.

■ After examination of the relevant pronouncements of the Supreme Court interpreting the Carmack Amendment, we conclude that statute encompasses an action, such as this, for damages arising out of an abortive attempt to deliver in accordance with the interstate contract of carriage. In Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), an action for nondelivery was brought in state court to recover the full market value of the shipment; the bill of lading adopted pursuant to the federal statute contained a limitation of value clause. The carrier relied upon the Carmack Amendment "as the only regulation applicable to an interstate shipment." In discussing the exclusive character of the Carmack Amendment regarding a carrier's liability under interstate contracts of shipment, the Supreme Court made the following observations:

"That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the state upon the subject of such contracts. * * *

"[I]t is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation which they had been theretofore subject. * * *

"The liability thus imposed is limited to 'any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common-law duty as a common carrier.

"But it has been argued that the non-exclusive character of this regulation is manifested by the proviso of the section, and that state legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of action against such a carrier conferred by existing state law. This view is untenable. It would result in the nullification of the regulation of a national subject and operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to put an end to." [226 U.S. 491, 505–507, 33 S.Ct. 148, 152]

The interpretation of Carmack adopted in *Croninger* was further developed in New York, Philadelphia & Norfolk R. R. v. Peninsula Exchange, 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1916), a suit by the consignee seeking damages from the carrier for failure to deliver with reasonable dispatch. Rejecting the argument that the Carmack Amendment did not cover an action for delay, the Court stated:

"The words 'any loss, damage, or injury to such property' * * * are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination. It is not necessary, nor is it natural in view of the general purpose of the statute, to take the words 'to the property' as limiting the word 'damage' as well as the word 'injury' and thus as rendering the former wholly superfluous. * * * [T]he duty to transport with reasonable despatch is none the less an integral part of the normal undertaking of the carrier. And we can gather no intent to unify only a portion of the carrier's responsibility."

If the word "damage" is not limited by the words "to the property," then the Carmack Amendment would impose lia-

bility on a carrier "for the full actual * * * damage * * * caused by it." Under this interpretation, the carrier is liable not only for delay in delivery but also for a misdelivery and the foreseeable damages thereby incurred by the consignee. Stated differently, the carrier is responsible under the Act for what is delivered as well as when it is delivered. The significant factor is that a carrier is answerable in damages for its breach of the contract of carriage. In the instant case, appellants' cause of action is essentially one for breach of contract of carriage in that, due to a mix-up of waybills, the carrier delivered the wrong tank car. Appellants' damages were incurred by the abortive attempt of the carrier to perform its contract. Except for the contract of carriage, no car would have been delivered. Except for the contract of carriage and their reliance on it, appellants' employees would not have accepted a tank car of unknown chemicals and fed them into appellants' plant facilities. So, the cause of action sounds in contract rather than in tort. Appellants correctly appraised their cause of action as being in contract and meticulously pleaded the terms of the contract in Count I of their complaint even though general negligence was also charged in Count II.

The scope which has been given to the Carmack Amendment is furnished by Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936). There, suit was brought to recover for failure to deliver a motion picture film in time to be exhibited as advertised. There was no damage to the film itself. The South Carolina Supreme Court held that, since the suit was for damages for the interruption of plaintiff's business caused by the carrier's negligence, the Carmack Amendment did not apply. The Supreme Court reversed, holding that the Carmack Amendment controlled.

The broad sweep of the statute is also exemplified by Georgia, Florida & Alabama Ry. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916).

It was said there that the Carmack Amendment is "comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation which, as defined in the Federal Act, includes delivery." It was also said in Blish that delivery "must mean delivery as required by the contract, and the terms of the stipulation are comprehensive,—fully adequate in their literal and natural meaning to cover all cases where delivery has not been made as required." In Blish, the bill of lading required that notice be given in case of a "failure to make delivery." The consignee argued that this clause did not include a situation where there was actual delivery to another or delivery in violation of instructions. Thus, although Blish is somewhat different factually, it supports the conclusion that an action for misdelivery is governed by the Carmack Amendment.

▪▪ These cases make it clear that when damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, the Carmack Amendment governs. To the extent that Peter Kiewit Sons' Co. v. Colorado & Southern Ry., 199 F.Supp. 261 (D.C.Colo.1961), relied on by appellants, adopts a different view, we regard it as inconsistent with the principles established by the Supreme Court in these cases, and decline to follow it. We hold that the misdelivery here alleged constituted a breach of the interstate contract of carriage, and that the Carmack Amendment is applicable. Such is the import of Marquette Cement Mfg. Co. et al. v. Louisville & Nashville RR, 281 F. Supp. 944, aff'd per curiam, 406 F.2d 731 (6th Cir. 1969), a case involving similar facts brought under the Carmack Amendment. There, Marquette regularly sold and shipped cement to Vulcan Materials Company at its two separate Chattanooga plants. One plant manufactured ready-mix concrete, while the other manufactured only concrete pipe. A carload of "air-entrained" cement,

suitable only for use in making concrete pipe, was shipped by Marquette via a bill of lading consigning it to Vulcan's concrete pipe division. Due to an error in routing, the railroad misdelivered the carload of "air-entrained" cement, sending it to Chattanooga Rock Products, the ready-mix concrete division. The ready-mix concrete made from this cement proved defective when used by customers and had to be replaced. Chattanooga Rock Products and Marquette then brought suit against the railroad to recover, inter alia, the damages resulting when the contents of the misdelivered shipment were used in the manufacturing process for which they were unsuited. Although the Chattanooga Rock Products Division of Vulcan did have on order from Marquette a carload of regular cement, it was not a party to the bill of lading covering the erroneously delivered carload of "air-entrained" cement. Likewise, here, appellants were not parties to the bill of lading covering the erroneously delivered carload of ethylene oxide. However, in both cases, the claim was based upon the breach of, or the negligent performance of, a duty created by an interstate contract of carriage.

The basic question in *Marquette* related to the measure of damages. In passing upon this point, the district court rejected the contention that a negligence action would lie for a misdelivery, and held that the only duty breached was the duty to deliver under an interstate contract of carriage. Accordingly, it was held that damages could be recovered only in contract. Thus, although the applicability of the Carmack Amendment was not directly in issue, the district court's disposition of the damages issue rests upon the assumption that the Carmack Amendment applied to that type of factual situation. Clearly, the *Marquette* case is in harmony with the controlling Supreme Court precedent and supports our conclusion that the Carmack Amendment is applicable here. It should be noted that, even though the cause of action arises under the contract of carriage and is covered by the Carmack Amendment, recovery of special or consequential damages is not necessarily precluded. Marquette Cement Mfg. Co. et al. v. Louisville & Nashville RR, supra; Whitlock Truck Service, Inc. v. Regal Drilling Co., 333 F.2d 488 (10th Cir. 1964). Although special damages were denied in *Marquette* because they were not "reasonably foreseeable," the test governing recovery of such damages is correctly stated in the opinion of the district judge in that case reported at 281 F.Supp. 944.

We turn now to the question whether there was a sufficient claim in writing to satisfy the requirement of section 2(b) of the bill of lading. That section provides that "[a]s a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury, or delay occurred within nine months after the delivery of the property * * *." The decisive question therefore is whether there exists here any document which can be said to be a claim in writing within the meaning of section 2(b).

Appellants first contend that compliance with section 2(b) of the bill of lading contract was unnecessary. This contention rests upon the assumption that, since no bill of lading was issued to appellants relative to the carload of ethylene oxide, their cause of action is not based on contract but is in tort. Reliance is placed on Norton v. Shotmeyer, 72 F.Supp. 188 (D.C.N.J.1947), where the requirement of section 2(b) of the bill of lading was held not to bar the defendants' counterclaim sounding in tort for damages arising out of the delivery to them of a carload of oil which belonged to the United States Navy. Although Norton superficially supports appellants' argument, careful examination of that decision reveals that it is not as apposite as appellants contend. There, the carrier had expressly represented to the counterclaimants that the oil belonged to them; more importantly, it is

not clear whether the railroad misdelivered the Navy oil in the sense that another shipment of oil was actually consigned to the counterclaimants or whether the Navy oil was delivered under circumstances unrelated to any specific contract of carriage between the parties.

■ When the cause of action arises out of a misdelivery in breach of a contract of carriage, a tort action does not lie. Adams Express Co. v. Croninger, supra; Southeastern Express Co. v. Pastime Amusement Co., supra; Marquette Cement Mfg. Co. v. Louisville & Nashville RR, supra. Therefore, the provisions of the contract of carriage, including the requirement that a claim be filed in writing within nine months, are binding. A plaintiff's designation of an action as one for tort does not control where, in looking at the complaint, it is apparent that the action is brought against a common carrier for breach of an interstate contract of carriage. Georgia, Florida & Alabama Ry. v. Blish Milling Co., 241 U.S. 190, 197, 36 S.Ct. 541, 60 L.Ed. 948 (1916).

■■ Although section 2(b) of the bill of lading is unquestionably valid and applicable here, the question remains whether there has been substantial compliance with its requirements. Generally speaking, any written document, however informal, which indicates an intention to claim damages and identifies the shipment will be sufficient. Insurance Company of North America v. Newtowne Mfg. Co., 187 F.2d 675 (1st Cir. 1951). The documents need not be in a particular form. The requirement of a written claim is addressed to a "practical exigency and is to be construed in a practical way." Georgia, Florida & Alabama Ry. v. Blish Milling Co., supra. In accordance with this liberal attitude, the requirement of a claim in writing has been held satisfied where the carrier had actual knowledge of the damage and had notified the damaged party of the destruction of the shipment, Hopper Paper Co. v. Baltimore & Ohio RR, 178 F.2d 179 (7th Cir. 1949); also where the

carrier had inspected the damaged property, noting the apparent damage, had acknowledged in writing that damages were sustained by carelessness in transit, and had agreed that a formal claim could be filed when itemized damages were ascertained. Loveless Mfg. Co. v. Universal Carloading & Distributing Company, 225 F.2d 637 (10th Cir. 1955).

■ With these guidelines in mind, and under the peculiar facts of this case, we are of the opinion that appellants have substantially complied with the requirements of section 2(b). We are not unmindful of our decision in B. A. Walterman Co. v. Pennsylvania RR, 295 F.2d 627 (1961), where we held that compliance with the notice requirement in the bill of lading was mandatory and could not be satisfied either by a verbal claim or by actual notice of the damages received by the carrier. We continue to adhere to that view.

Here, however, unlike *Walterman*, written documents in support of appellants' claim were actually presented to L & N officials when they visited the plant on April 4 to investigate the damages arising out of the misdelivery. Since the record does not disclose the circumstances which prompted L & N to return those documents to appellants, we do not regard the return of the documents as controlling. Moreover, presentation of the documents as evidence of a claim then being made cannot be viewed in a vacuum but must be evaluated in light of the surrounding circumstances. It must be remembered that the purpose of the notice requirement is not to escape liability but to facilitate prompt investigation.

According to appellants' uncontroverted affidavit, the L & N representative acknowledged that a claim for damages was being made and that a formal claim would be submitted when the damages were ascertained. The documents presented at that time, although not expressly reciting a claim for damages, clearly reveal the particular shipment to which the claim referred, the railroad's

error in routing that shipment, and the source of damages. When these documents are viewed in the context of the surrounding circumstances, they constitute an adequate statement of claim within the requirements of section 2(b).

The judgment of the district court is affirmed, except as to the ruling that the notice of claim filed by appellants is insufficient; that portion of the judgment is reversed and the case is remanded to the district court for proceedings consistent with this opinion.

O'SULLIVAN, Circuit Judge (dissenting).

I regret that I must respectfully dissent. In my view, the action here involved is not controlled by the Carmack Amendment. The wrong committed here did not arise from misdelivery of the car of *butadiene.* Such cargo was the subject matter of the bill of lading which, in turn, was the only *contract* involved. That car, although first erroneously delivered to Olin Mathieson, came on to the plant of plaintiff undamaged, and no damage was suffered because of its delayed arrival. The only *property* of plaintiff covered by the contract made by the bill of lading was the butadiene. The plaintiff here did not suffer any "loss, damage or injury to such *property.*" The wrong resulted from the delivery of ethylene oxide to plaintiff; the injury, if any, resulted from plaintiff's unloading of the chemical, thinking it to be butadiene.

I do not read the Supreme Court decisions in Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913); New York, Philadelphia & Norfolk R. R. v. Peninsula Exchange, 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511 (1916); Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936); and Geor-

gia, Florida & Alabama Ry. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916), as supporting the view of my brethren in this case. *Adams Express* involved total loss of the *cargo covered by a bill of lading; Southeastern Express Co.,* involved damage suffered by delay in delivery of the *cargo covered by a bill of lading; Georgia, Florida & Alabama Ry.* involved damage to, and conversion of, the *cargo covered by a bill of lading; New York, Philadelphia & Norfolk R.R.* involved damage to the value of the *cargo covered by a bill of lading* due to delay in delivery.

The Supreme Court has never had the precise point before it, and I do not consider that dictum in one or more of the cases referred to above can be said to clearly support the defendant's position here. No decision of any of the United States Courts of Appeals has been cited to us. Two District Court cases, Peter Kiewit Sons' Co. v. Colorado & Southern Ry., 199 F.Supp. 261, 264 (D.C.Colo. 1961) and Norton v. Shotmeyer, 72 F. Supp. 189, 193 (D.C.N.J.1947) generally support the view I express. Respectfully, I do not believe that this Court's decision in Marquette Cement Mfg. Co. et al. v. Louisville & Nashville R.R., 406 F.2d 731 (1969) is a controlling precedent here. The complaint in that case set out that it was based upon the Carmack Amendment. No question as to that Amendment's applicability was raised or considered by the District Court or by us.

I agree that if the Carmack Amendment were applicable here, a sufficient notice of claim, as called for by that statute, was given by plaintiffs to defendant.

I would vacate the judgment of the District Court, with direction to remand the cause to the Circuit Court of Jefferson County, Kentucky, for trial.