SUNSHINE HOSIERY MILLS *v.* CHAMBERS TRUCK CO.

(*Jackson*, April Term, 1937.)

Opinion filed July 3, 1937.

RICHARD GLEAVES and W. C. CHERRY, both of Nashville, for appellant.

JAMES D. RICHARDSON, of Murfreesboro, for appellee.

MR. SPECIAL JUSTICE F. T. FANCHER delivered the opinion of the Court.

This suit was brought in the chancery court of Warren county for the loss of a shipment of certain machinery delivered to the defendant, a public carrier at Murfreesboro, to be shipped to Kankakee, Illinois. The shipment was lost in transit over a connecting line. The suit is against the initial carrier and judgment was given against defendant for $2,245.41, principal and interest.

The facts are stipulated. Bill of lading was issued by the defendant, showing a receipt of the articles of machinery, and weight, and that freight was prepaid by the shipper. It is signed by Chambers Truck Company, by its agent, and in the heading it shows the following: "shipped by truck, Chambers Truck Company," and that it was received subject to the classification and tariffs in effect on the date of the issues of the waybill at Mur-

freesboro on January 23, 1933; that the shipment was from Sunshine Hosiery Mills consigned to Paramount Textile Machinery Company, destination, Kankakee, Illinois, that the articles were received in good condition.

Chambers Truck Company, in accepting said shipment from Sunshine Hosiery Mills, stated to the duly authorized agent and representative of Sunshine Hosiery Mills that its line ran only to the city of Nashville, Tennessee, and that at this point the services of a connecting carrier would be used in order that the shipment might go forward from Nashville to Kankakee; that the agent of Chambers Truck Company stated to the agent of Sunshine Hosiery Mills that he preferred, and very greatly preferred, making the shipment over a certain carrier with which the Chambers Truck Company was in the habit of doing business and which it regarded as a safe and reliable carrier for such merchandise. However, the agent of Sunshine Hosiery Mills stated to the agent of Chambers Truck Company that he had a friend connected with another line out of Nashville shipping over the line, represented by his friend and the Chambers Truck Company complied with this request and made the shipment out of Nashville over the other line, with which it was not in the habit of doing business.

This other connecting line, on which the loss occurred, is insolvent. The question is presented whether the initial carrier is liable under the Carmack Amendment [as amended, 49 U. S. C. A., section 20 (11, 12)].

The Carmack Amendment to the Interstate Commerce Act, shows it applies to any common carrier railroad or transportation company subject to the provisions of that act. The Interstate Commerce Act, 49 U. S. C. A., section 1 et seq., applies to certain stated common carriers,

and enumerates carriers by railroad and those carrying partly by railroad and partly by water, certain pipe lines, etc., but does not mention carriers by motortruck. Under the well-established rule that where matters included are enumerated, the effect is to exclude from the class those not enumerated, it would seem that the Carmack Amendment, making the initial carrier liable for loss on connecting lines on through interstate shipments does not apply.

In a case involving loss of baggage on a connecting line, this court said:

"The Interstate Commerce Act, 49 U. S. C. A., section 1 et seq., at the time the Dixie Greyhound Lines sold Kaplan the ticket in question, did not assume to regulate interstate commerce between the states by motor vehicles. *Cobb* v. *Department of Public Works* (D. C.), 60 F. (2d), 631; *Interstate Transit Co.* v. *Derr*, 71 Mont., 222, 228 P., 624, 625. The Motor Act, approved August 9, 1935 (49 U. S. C. A., sections 301-327), is inapplicable because enacted subsequent to the happening of the matter here in controversy." *Dixie Greyhound Lines, Inc.,* v. *Kaplan*, 169 Tenn., 513, 514, 518, 89 S. W. (2d), 342, 343.

But nonliability does not follow, regardless of the interstate commerce law.

In most states of America the courts regard each company as liable in the common carrier capacity only for the extent of its own line, unless there be a special contract to the contrary. This is called the American rule though a few states, Tennessee included, have adopted the English rule as the more reasonable and sound public policy. The English-Tennessee rule is, that the receipt of goods marked for a given point, without positive limi-

tation of responsibility, affords *prima facie* evidence of an undertaking on the part of the carrier to transport them safely to their destination, whether within or beyond the limits of its own line. *Merchants' D. Trans. Co.* v. *Bloch Bros.*, 86 Tenn., 392, 414, 6 S. W., 881, 6 Am. St. Rep., 847; *East Tennessee & V. R. Co.* v. *Rogers*, 6 Heisk. (53 Tenn.), 143, 19 Am. Rep., 589; *Western & A. R. Co.* v. *McElwee*, 6 Heisk. (53 Tenn.), 208; *Carter & Hough* v. *Peck*, 4 Sneed (36 Tenn.), 203, 67 Am. Dec., 604.

█ This rule of liability is upon the idea that each connecting carrier is the agent or servant of the initial or contracting carrier.

We are further of the opinion that the defendant cannot escape liability because the connecting carrier was suggested by the shipper. The complainant did not absolutely require that the shipment should be made over a certain line.

The shipper suggested and preferred this particular connecting carrier, but the defendant assented to the request, and by its receipt and bill of lading undertook to transport to destination. The connecting carrier was therefore the agent of defendant. It did not undertake to limit its liability.

Decree of the chancellor affirmed.