**RANDOLPH, Plaintiff-Appellee. v. AMERICAN AIRLINES, INC., Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 5501.   Decided December 12, 1956.

Bricker, Marburger, Evatt & Barton, Robert L. Barton, Richard C. Pickett, of Counsel, Columbus, for plaintiff-appellee.

Collis Gundy Lane, Richard Huggard, Kent Ozmun, Columbus, for defendant-appellant.

(FESS and DEEDS, JJ, of the Sixth District; HUNSICKER, J, of the Ninth District, sitting by designation in the Second District.)

## OPINION

By FESS, J.

Appeal on questions of law from a judgment of the Common Pleas Court in favor of the plaintiff in the sum of $835.00 and costs. The judgment was rendered by the court without the intervention of a jury upon an agreed stipulation of facts.

On March 20, 1952, plaintiff purchased a ticket for transportation from Columbus, Ohio, to New Orleans, Louisiana, for the sum of $64.00. On March 21, 1952, prior to boarding defendant's plane at Columbus, Ohio, plaintiff checked her suitcase, which with its contents was worth $835.00, with defendant for transportation to New Orleans. The suitcase was not delivered to plaintiff upon her arrival, nor thereafter. At the time of the purchase of her ticket and also when she checked her suitcase, plaintiff declared no value on it. Defendant made no extra charge based on value in excess of $100.00. As a matter of fact, no discussion was had between the parties pertaining to the value of the luggage nor the insuring of it.

In March, 1952, defendant had on file with the Civil Aeronautics Board a tariff which was duly filed, posted and published, as required by the Civil Aeronautics Act. So far as is pertinent to this case, this tariff provided that the total liability of the defendant occasioned by reason of any loss of, injury to or delay in the delivery of any personal property accepted for transportation as baggage would be limited to $100.00 for each passenger unless at the time of acceptance for transportation, when, for checking in for flight, the carrier has accepted

greater liability; that "upon request and declaration, and payment of an additional transportation charge computed at the rate of ten (10) cents for each $100.00 or fraction thereof, of excess value declared, the carrier will accept liability for loss of, injury to, or delay in the delivery of such baggage up to the amount declared for each piece, with a maximum limit per passenger" of $25,000.00. In checking baggage with defendant and receiving a check therefor, plaintiff was unaware of and had no knowledge of the published tariff and plaintiff did not read the conditions in small print on her ticket and baggage check referring to limited liability.

Inasmuch as this litigation involves an interstate shipment of baggage with an airline common carrier, the rights and liabilities of the parties are to be determined by federal law. Cf. **Patton Co. v. Pa. Greyhound Lines, Inc., 75 Oh Ap 100**; Adams Express Co. v. Croninger, 226 U. S. 491; New York, N. H. & H. R. Co. v. Notnagle (1952) 346 U. S., 128. It must be conceded that a tariff properly filed and published pursuant to law becomes a part of the contract of carriage. Boston & Maine R. Co. v. Hooker, 233 U. S., 97; Western Union Tel. Co. v. Esleve Bros. Co., 256 U. S., 566.

The sole question to be determined upon this appeal is whether or not the tariff limiting liability on baggage to $100.00, unless excess value is declared and the extra charge based on such valuation has been paid, was authorized to be filed under the provisions of the Civil Aeronautics Act and the regulations of the Board.

There is a general rule of law that common carriers can not stipulate for immunity from their own or their agent's negligence. While this rule was fashioned by the courts, it has been continuously accepted as a guide to common carrier relationships for more than a century and has acquired the force and precision of a legislative enactment. United States v. Atlantic Mutual Insurance Co., 343 U. S., 236.

But at common law, a distinction was made between a contract immunizing a carrier from liability for negligence and a contract limiting liability upon an agreed valuation at a higher charge or rate. As early as 1848, in New Jersey Steam Navigation Co. v. Merchants Bank, 6 Howard, 344, 384, the Supreme Court recognized that a carrier was allowed to exempt himself from losses arising out of events and accidents against which he was a sort of insurer. In York Co. v. Central Railroad Co. (1865), 3 Wall, 107, the court held that the common law liability of a common carrier for the safe carriage of goods may be limited and qualified by special contract with the owner, provided such contract does not attempt to cover losses by negligence or misconduct.[1]

In Hart v. Pa. Rd. Co., (1884) 112 U. S., 331, the court held:

---

1. This distinction has been recognized in Ohio in cases involving a special contract between a carrier and a shipper. In *Baltimore & O. Rd. Co.* v. *Hubbard (1905) 72 Ohio St., 302*, the court held that in consideration of a reduced rate of carriage, a carrier might lawfully contract to be responsible for no more than the agreed valuation. In *Pennsylvania Co.* v. *Shearer (1906), 75 Ohio St., 249*, the court sustained an express contract clause requiring the filing of a claim for loss within a specified time.

"Where a contract of carriage, signed by the shipper, is fairly made with a railroad company, agreeing on a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

The language employed by the court in its opinion is significant.

"The presumption is conclusive that, if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged. **The rate of freight is indissolubly bound up with the valuation.** If the rate of freight named was the only one offered by the defendant, it was because it was a rate measured by the valuation expressed. If the valuation was fixed at that expressed, when the real value was larger, it was because the rate of freight named was measured by the low valuation. The plaintiff can not claim a higher valuation, on the agreed rate of freight." (Emphasis supplied.) Hart v. Pa. Rd. Co., supra, p. 337.

Further in the opinion, the court goes on to say:

"The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater." Hart v. Pa. Rd. Co., supra, pp. 340, 341.

The foregoing decisions were rendered prior to the enactment of the Carmack amendment in 1906. As originally enacted, the Carmack amendment merely required the carrier to issue a bill of lading and provided that the carrier should be liable to the holder thereof for any loss, etc., caused by the carrier or a connecting carrier, and that no contract should exempt such carrier from the liability thereby imposed. 34 Stat. 595. No reference was made to limited liability upon agreed valuation such as is presently found in the second exception in Section 20(11) Title 49, U. S. Code.

Adams Express Co. v. Croninger (1912) 226 U. S., 491, arose under the original subsection of Section 20 of the Carmack Amendment as enacted in 1906.[2]

The primary question decided was that Congress had enacted a uniform rule as to liability imposed on interstate carriers with respect to bills of lading thus superseding all state regulations on the subject. The case involved a schedule based upon declared rates of valuation similar to the one involved in the instant case. The State court had awarded recovery for the full value of the diamond ring delivered to the express company for shipment. The judgment of the State court was reversed. In its opinion, the court said:

---

2. Cf. footnote 1, p. 503, for terminology of Section 20.

"That a common carrier can not exempt himself from liability for his own negligence or that of his servants is elementary. York Mfg. Co. v. Illinois Central Railroad, 3 Wall. 107; Railroad Co. v. Lockwood, 17 Wall, 357; Bank of Kentucky v. Adams Express Co., 93 U. S., 174; Hart v. Pennsylvania Railroad, 112 U. S., 331, 338. The rule of the common law did not limit his liability to loss and damage due to his own negligence, or that of his servants. That rule went beyond this and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God or the public enemy. But the rigor of this liability might be modified through any fair, reasonable and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servants. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations, and the right to agree upon a rate proportionate to the value of the property transported."

The court went on to say:

"It has therefore become an established rule of the common law as declared by this court in many cases, that such carrier may by a fair, open, just and reasonable agreement limit the amount recoverable by a shipper in case of loss or damage to an agreed value made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk. * * * That such a carrier might fix his charges somewhat in proportion to the value of the property is quite as reasonable and just as a rate measured by the character of the shipment."

The court further indicated that such a contract is not an exemption from liability for negligence, but is a contract as to what the property is, in reference to its value; the purpose of it is not to change the nature of the undertaking of the carrier or limit his obligation in the care and management of that which is entrusted to him.

Again, in Boston & Maine Rd. Co. v. Hooker (1913) 233 U. S., 97, the court said that the effect of permitting the carrier to file regulations as to passengers' baggage, which limit its liability except on payment of specified rates, is not to change the common law rule that the carrier is an insurer against its own negligence, but simply that the carrier shall obtain commensurate compensation for the responsibility assumed. The Court also held that knowledge of the shipper that the rate is based on value is to be presumed from the terms of the bill of lading and of the published tariff schedules filed with the Interstate Commerce Commission, and the effect of so filing the schedules makes the published rates binding on shipper and carrier alike. This case turned upon the construction of Section 6 of the Interstate Commerce Act as amended by No. 2 of the Hepburn Act (Carmack Amendment), June 29, 1906, 34 Stat. 584, 586, requiring the filing of schedules showing all the rates, fares, and charges for transportation, including "All other charges which the Commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part of the aggregate of such aforesaid rates, fares, and charges, of

the value of the service rendered to the passenger, shipper, or consignee." The court said: "It seems to us that the ordinary signification of the terms used in the act would cover such requirements as are here made for the amount of the recovery for baggage lost by the carrier. It is a regulation which fixes and determines the amount to be charged for the carriage in view of the responsibility assumed, and it also affects the value of the service rendered to the passenger."

In Western Union Telgraph Co. v. Esteve Bros. (1920) 256 U. S., 566, it was argued that the rule limiting liability with respect to carriers under the Interstate Commerce Act was not applicable because of the difference in the provisions of law which governed the establishment of railroad and telegraph rates. The railroad rate could only be established by filing the tariff with the Commission. Telegraph companies might initiate rates without filing tariffs with the Commission. But the court concluded that when the telegraph company initiated and established its rates, the principle of equality and uniformity laid down in Section 3 of the Interstate Commerce Act required that it should have exactly the same force and effect as the rate initiated by a rail carrier and filed according to the provisions of Section 6 of the Act. The court held that the senders of the message were bound as a matter of law by the provision limiting liability, without regard to their knowledge or assent, because it was a part of a lawfully established rate which could not be departed from without creating an undue preference or advantage in violation of Section 3 of the statute.

It seems to be the position of the plaintiff-appellee that decisions in railroad cases have no bearing upon the instant case because cases involving carriers under the Interstate Commerce act are authorized to limit their liability upon a declared valuation under the specific provisions of the Carmack amendment whereas the Civil Aeronautics Act contains no such provision.[3]

As indicated above, the right to so limit liability arises at common law independent of federal statute, except as provision is made requiring the filing of tariff rates and schedules, which, if reasonable, become binding alike upon the carrier and its patron.

Section 483(a) of the Civil Aeronautics Act (Title 49, Section 483 U. S. Code) requires every air carrier to file, post and publish tariffs showing all rates, fares and charges for air transportation, and, to the extent required by regulations of the Board, showing all classifications, rules, regulations, practices, and services in connection with such air

---

3. The Carmack amendment was not made applicable to motor carriers until 1935, Title 49 U. S. Code, Section 319. Plaintiff cites Tubize Chattilon Corp. v. White Transportation Co. (1934), 6 F. Supp., 15; Outdoor Clothing Co. v. Universal Carloading & Dist. Co. (1938), 3 N. Y. S. 2nd, 586 and Sunshine Hosiery Mills v. Chambers Truck Co. (1937), 171 Tenn., 677, 107 S. W. 2nd, 515, holding that the Carmack amendment did not apply to motor carriers, and that the liability imposed for loss in transit upon initial carriers by the Carmack amendment did not apply to motor carriers. These decisions are obviously inapplicable to the determination of the question presented herein.

transportation. Section 483(b) contains the customary prohibition against discrimination by providing that no air carrier shall charge a greater or less or different compensation for air transportation, or for any service in connection therewith, than the charges specified in the currently effective tariffs. In its regulations, the Board has defined tariff as follows:

" 'Tariff' means a publication containing rates applicable to the transportation of persons or property and rules relating to the transportation of persons or property and rules relating to or affecting such rates or transportation." Paragraph (d) Economic Regulation 221.1, Civil Aeronautics Board.

In the light of the above decisions of the Supreme Court, it seems clear to a majority of the court that the limitation of liability clause in the tariff applicable herein does not constitute an exemption from liability for negligence, but is a regulation fixing and determining the amount of recovery for lost baggage premised upon the amount to be charged for the carriage in view of the responsibility assumed. It is therefore valid and binding upon the carrier and the passenger alike

We agree to the general principle asserted by plaintiff that there must be statutory authority for filing a particular clause in a tariff before persons affected thereby are charged with notice thereof or bound by its terms. Southern Pac. Co. v. United States, 272 U. S., 445; Pacific S. S. Co. v. Cackette, (1925) 8 Fed. 259.[4]

Thus it has been held that under the Civil Aeronautics Act, a clause in a tariff prescribing a limitation of time for the filing of notice of claims and suits for personal injury is not authorized and is not binding upon the passenger, because it has no relation to rate for transportation. Shortley v. Northwestern Airlines (1952), 104 F. Supp., 152, but recognizing the validity of a limitation of liability for loss of property based upon a declared valuation. Thomas v. American Airlines, Inc. (1952) 104 F. Supp., 650; Toman v. Mid-Continent Airlines, Inc. (1952) 107 F. Supp., 345; Bernard v. U. S. Aircoach (1953), 117 F. Supp., 134;[5] Crowell v. Eastern Airlines, Inc. (1954), 129 F. Supp., 319. See also: Glenn v. Compania Cubana Avicon (1952), 102 F. Supp., 631.

On the other hand, a tariff regulation that no action shall be maintained for injury to a passenger unless written notice of claim be presented within a limited time has been held reasonable and valid. Wilhelmy v. Northwest Airlines (1949), 86 F. Supp., 565. Likewise, a limitation of one year for bringing suit has been sustained. Herman v. Capitol Airlines (1951) 104 F. Supp., 955. See, also, State v. Eastern Air-

---

4. In Boston & M. R. Co. v. Hooker, supra, the court made express reference to the notice which follows from the tariff filed "as required by statute and the order of the Interstate Commerce Commission." As hereinafter discussed, however, there is a presumption of validity until otherwise decided by the Board or Commission.

5. In distinguishing Lichten v. Eastern Airlines, infra, the court stated that it has long been recognized that the value of property transported either as baggage or freight is a common ingredient of calculation of tariff and liability for damage.

lines (1948), 120 F. Supp., 745; Indemnity Ins. Co. v. Pan American Airways (1944), 58 F. Supp. 338; Sheldon v. Pan American Airways, Inc. (1947), 74 N. Y. S. 2nd, 267, 578 (but arising under Warsaw Convention). New York & Honduras, etc., Co. v. Riddle Airlines, Inc. (1956), 152 N. Y. S. 2nd, 753 (citing Lichten v. Eastern Airlines, supra). Tariff regulations with respect to delay in transportation, have also been sustained. Jones v. Northwest Airlines, Inc. (1945), 22 Wash., 2nd, 863, 157 Pac. 2nd, 728; Mack v. Eastern Airlines (1949), 87 F. Supp., 113; Furrow & Co. v. American Airlines (1951), 102 F. Supp., 808.

It has been specifically held that liability of an air carrier in respect to baggage is limited under such carrier's tariff to the value stated there-- in or its equivalent per passenger, unless a higher valuation is declared in advance and additional charges are paid pursuant to the carrier's tariff. Radinsky v. Western Air Lines, Inc. (Col. 1952), 242 Pac. 2nd, 815; Wilkes v. Braniff Airways (Okla. 1955), 288 Pac. 2nd. 377; Toepfer v. Braniff Airways (1935), 135 F. Supp., 671; Harris Trust & Savings Bank v. United Air Lines, 1951 U. S. Aviation Reports; Wadel v. American Airlines, Inc., 269 S. W. 2nd, 857 (citing Lichten v. Eastern Airlines, infra); Kenny v. Northeast Airlines (1956), 152 N. Y. S. 2nd, 966 (citing the Lichten case, infra). Plaintiff contends that in these cases the validity of the tariff in question was either assumed or not considered by the courts.

The cases cited above are United States District and State court decisions. Lichten v. Eastern Airlines (1951), 189 Fed. 939, 25 A. L. R. 2nd, 1337, was decided by the U. S. Circuit Court of Appeals for the Second Circuit. Defendant relies upon the decision of the majority. Plaintiff argues that the dissenting opinion is more persuasive. As in the cases dealing with a clause limiting the time within which to file notice of claim, the clause involved in the Lichten case is entirely different than the limitation of liability clause in the instant case. In Lichten, the carrier transported a passenger's baggage under a stipula- tion in its tariff that any jewelry should be at the passenger's risk It is ·to be readily observed that such a stipulation exempted the carrier "from all liability for its own negligence," as said by Judge Frank, without any provision for a declared value for which it might exact a higher fare or rate.[6]

The majority of the court held such stipulation to be a part of the carrier's contract with the passenger, and to be one within the power of the Civil Aeronautics Board to approve. It was further held that its reasonableness could not be attacked in the courts until the administrative remedy for the correction of unreasonable stipulations had been exhausted, and that the regulation is deemed valid until the Board declares otherwise. Frank, C. J., filed a vigorous dissenting

---

6. Although the carrier defended on the ground that it was exempt from liability for all loss, it also contended that, in any event, it was exempt from liability in excess of the valuation specified in its tariff. Since it pre- vailed under the first contention, there was no occasion for the court to comment on its alternative contention, except the expression of Judge Frank that the alternative was "doubtless valid."

opinion on the ground that the Board had no authority to accept and legalize such tariff exempting the carrier from liability. Under the circumstances disclosed in that case, were we permitted to do so, we could well go along with the reasoning of Judge Frank. But upon the facts, the case must be distinguished. In his dissent, Judge Frank says that the $100.00 limitation with respect to baggage "is doubtless valid," thus recognizing the distinction between such clause and the one exempting the carrier from all liability.

In Herman v. Northwest Airlines (1955), 222 Fed. 2d, 326, Judges Hand, Swan and Hincks, reiterated that portion of the Lichten case holding an air carrier's regulation with respect to limiting time for bringing suit is to be deemed valid until the Civil Aeronautics Board declares otherwise.

In conclusion, it is regrettable that a passenger on a carrier wholly unaware of the provisions of a tariff schedule should suffer loss as the result of the carrier's failure to advise him of his right to recover full value of his baggage upon the payment of a slight additional charge. The Aeronautics Board might well adopt a regulation requiring the tender of a valuation slip to the passenger, incident to the checking of baggage. But in view of the foregoing all-too extended observations, the judgment of the Common Pleas Court must be modified by reducing the amount thereof to the sum of $100.00, and as so modified the judgment be affirmed at appellee's costs. Cause remanded to the Common Pleas Court for execution.

HUNSICKER, J, concurs.
DEEDS, J, dissents.

## DISSENTING OPINION

By DEEDS, J.

It is my opinion that Section 483 of the Civil Aeronautics Act requiring carriers by air to file "tariffs showing all rates, fares and charges for air transportation between points served by it," etc., did not authorize the carrier to limit its liability under the law as established and applicable in determining the air carrier's responsibility in the circumstances as shown to exist by the evidence in this case, and it is therefore my view that the judgment of the trial court should be affirmed.

Texas P. R. Co. v. Mugg, 202 U. S., 242; Chicago & A. R. Co. v. Kirby, 225 U. S., 155; Southern Pacific Co. v. United States, 272 U. S., 445, 45 S. Ct. 123, 71 L. Ed. 343; United States v. Atlantic Mutual Insurance Co., 343 U. S., 236.