Milton W. ODOM, as Executor of the Will and Estate of Corinne Odom, Deceased, Appellant,

v.

PACIFIC NORTHERN AIRLINES, INC., an Alaskan Corporation, Appellee.

No. 386.

Supreme Court of Alaska.

June 10, 1964.

Robert Boochever of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellant.

John M. Stern, Jr., Anchorage, for appellee.

Before NESBETT, Chief Justice, and DIMOND and AREND, Justices.

AREND, Justice.

This is an appeal by the plaintiff below from a summary judgment and dismissal of an action sounding in tort. The principal question presented is whether an airline carrier's traffic rule specifying that unchecked baggage or other personal property shall be carried at the risk of the passenger is invalid and unreasonable as an attempt to absolve the carrier from liability for its own negligence.

On June 14, 1960, Corinne Odom was killed when a plane of the defendant airline, in which she was traveling as a paying passenger, crashed into the face of Mount Gilbert about fifty miles east of the City of Anchorage. The plaintiff Milton W. Odom, executor of Corinne's estate, instituted this action in the superior court to recover $8,079.98. This amount, he alleged, was the value of the jewelry and other personal property of the decedent, worn or carried aboard the plane by her and destroyed in the crash.[1]

At the time of the ill-fated flight, the defendant was a duly licensed and certificated air carrier operating in interstate commerce and had on file with the Civil Aeronautics Board, hereinafter referred to as CAB, its schedule of tariffs as provided for by 49 U.S.C.A. § 1373(a).[2] The defendant's tariffs, or portions thereof, pertinent to the issues here involved provided:

10 II.     Articles Accepted as Baggage: Baggage shall consist only of wearing apparel, nonliquid toilet articles and similar effects for actual use which are necessary and appropriate for the comfort and convenience of the passenger for the purposes of the journey * * *. Money, jewelry, silverware, samples, negotiable paper, securities and similar valuables or business documents will be carried only at the risk of the passenger.

10 III A.     The passenger having been offered a choice of rates according to value, any liability of a carrier in respect to baggage and other personal property is limited to its declared value (or its actual value if less) which shall not exceed one hundred ( 100.00) [*sic*] per passenger, unless a higher valuation is declared in ad-

---

1. In addition to the personal property worn or carried aboard the plane by the decedent she had checked other items of luggage with the carrier.

2. The portion of 49 U.S.C.A. § 1373(a) [72 Stat. 758 (1958); 74 Stat. 445 (1960)] applicable to this case reads: "Every air carrier * * * shall file with the Board, and print, and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it * * * and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation. * * *"

vance and additional charges are paid pursuant to the carrier's tariffs.

10 III E. * * * Unchecked baggage or other personal property shall be carried at the risk of the passenger.

In support of its motion for summary judgment, the defendant airline contended below that its tariff rules as an air carrier, filed with the CAB, were binding upon the plaintiff's decedent, thus absolving the defendant from any liability for its negligence or, in the alternative, limiting its liability, if any, to the amount of $100, which it had tendered into court. Additionally it argued that the reasonableness and validity of its tariffs could not be attacked in the courts in the first instance, because the CAB has exclusive primary jurisdiction to hear and decide such an issue.

The plaintiff responded that defendant's tariff rules were unreasonable and invalid in that their effect was to absolve the defendant of its common law liability as a common carrier for the consequences of its negligence. He conceded that a carrier may limit its liability as an insurer of checked baggage by making declared value baggage tariff regulations, but insisted that the carrier may not relieve itself of all liability for damage, caused by its own negligence, to personal belongings taken aboard the airplane by the passenger and clothing and accessories worn by the passenger without affording him a minimum valuation of such property and a right to declare a higher valuation and secure coverage therefor.

With reference to the defendant's claim that CAB has exclusive primary authority to pass upon tariff rules filed with it, the plaintiff pointed out to the trial court that the statutory power of the CAB to hear complaints pertaining to tariff rules is a remedy limited to future practices[3] and does not appear to be intended to be used in circumstances such as the subject case where the rule is no longer in effect[4] and a decision must be secured pertaining to its reasonableness as to a past transaction. The plaintiff then concluded that, since the CAB is not empowered to rule as to the past transaction involved in this case, jurisdiction must be exercised by the courts. The defendant agreed that the court should not hold the case in abeyance pending an administrative hearing, both for the reasons stated by the plaintiff and for the further reason that the CAB has never decided in the past that a tariff rule such as defendant's rule 10 III E is invalid.

After reviewing the briefs filed by the parties and hearing their oral arguments, the court gave summary judgment for the defendant, dismissing the plaintiff's action and ordering the clerk to pay to the plaintiff the $100 in the court registry. While the court did not state the rationale for its decision and none was required by rule,[5]

3. The statutory power of the CAB to hear and determine issues relating to the reasonableness and validity of tariff rules is set forth in 49 U.S.C.A. § 1482(d) [72 Stat. 788 (1958)] as follows:

"Whenever, after notice and hearing, upon complaint, or upon its own initiative, the Board shall be of the opinion that any individual or joint rate, fare, or charge demanded, charged, collected or received by any air carrier for interstate or overseas air transportation, or any classification, rule, regulation, or practice affecting such rate, fare, or charge, or the value of the service thereunder, is or will be unjust or unreasonable, or unjustly discriminatory, or unduly preferential, or unduly prejudicial, the Board shall determine and prescribe the lawful rate, fare, or charge (or the maximum or minimum, or the maximum and minimum thereof) *thereafter* to be demanded, charged, collected, or received, or the lawful classification, rule, regulation, or practice thereafter to be made effective * * *." [Emphasis supplied.]

4. We gather from the record that tariff rule 10 III E went into effect on August 9, 1957, and was cancelled by the defendant on April 25, 1961, without CAB instigation. The accident in which the plaintiff's decedent lost her life and property occurred on June 14, 1960.

5. Civil Rule 52(a) provides in the last sentence thereof that findings of fact and conclusions of law are unnecessary on decisions of motions for summary judgment.

it would seem that the court must have considered itself to be without jurisdiction to determine the reasonableness or validity of the applicable tariff rules.

The parties come before us with much the same arguments which they advanced in the court below. We regard the decisive issues on this appeal as being purely legal and shall dispose of them accordingly.

The authorities have uniformly held that in litigation growing out of the interstate shipment of personal property with a common carrier by air, such as we have under consideration here, the rights and liabilities of the parties are determined by the federal law.[6]

Within the framework of both federal and state law there is also recognized and applied the common law principle that a common carrier may not exempt itself from liability for its own negligence or that of its servants.[7] Speaking of that principle, the Supreme Court of the United States stated in 1952:

"There is a general rule of law that common carriers cannot stipulate for immunity from their own or their agents' negligence. While this general rule was fashioned by the courts, it has been continuously accepted as a guide to common-carrier relationships for more than a century and has acquired the force and precision of a legislative enactment. * * *"[8]

While common carriers cannot absolve themselves completely from liability for the consequences of their own negligence, they can lawfully limit recovery to an amount less than the actual loss sustained by granting their customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge.[9] For example, a carrier by air may lawfully provide in its tariff rules that its liability is limited to the value of $100 unless a higher valuation is declared in advance and additional charges paid.[10]

One other rule of law to be noted here is that questions regarding the reasonableness of rates and practices are to be left to the administrative agency in the first instance.[11] This rule is sometimes referred

6. Mustard v. Eastern Air Lines, Inc., 338 Mass. 674, 156 N.E.2d 696 (1959); Randolph v. American Airlines, Inc., 103 Ohio App. 172, 144 N.E.2d 878, 880 (1956); Wadel v. American Airlines, Inc., 269 S. W.2d 855 (Tex.Civ.App.1954); and *cf.* New York, N. H. & H. R. R. v. Nothnagle, 346 U.S. 128, 130–131, 73 S.Ct. 986, 97 L.Ed. 1500, 1504–05 (1953); Adams Express Co. v. Croninger, 226 U.S. 491, 499–506, 33 S.Ct. 148, 57 L.Ed. 314, 317–320 (1913); Jones v. Northwest Airlines, Inc., 22 Wash.2d 863, 157 P.2d 728 (1945).

7. United States v. Atlantic Mut. Ins. Co., 343 U.S. 236, 239, 72 S.Ct. 666, 96 L.Ed. 907, 913 (1952); Strickland v. Missouri Pac. Transp. Co., 195 Ark. 950, 115 S.W. 2d 830, 833 (1938); Franklin v. Southern Pac. Co., 203 Cal. 680, 265 P. 936, 938–939, 59 A.L.R. 118 (1928), cert. denied 278 U.S. 621, 49 S.Ct. 24, 73 L.Ed. 542 (1928); Miller v. Maine Cent. R., 125 Me. 338, 133 A. 907, 908, 47 A.L.R. 720 (1926); Las Vegas-Tonopah-Reno Stage Line, Inc. v. Burleson, 74 Nev. 24, 320 P. 2d 1104 (1958); Randolph v. American Airlines, Inc., supra note 6.

8. United States v. Atlantic Mut. Ins. Co., supra note 7.

9. New York, N. H. & H. R. R. v. Nothnagle, 346 U.S. 128, 135, 73 S.Ct. 986, 97 L.Ed. 1500, 1507 (1953); Nashville, C. & St. L. Ry. v. Ham, 78 Ga.App. 403, 50 S.E.2d 831, 839–840 (1948); Randolph v. American Airlines, Inc., 103 Ohio App. 172, 144 N.E.2d 878, 880–883 (1956); Lang v. Shofner, 175 S.W.2d 701 (Tex. Civ.App.1943); see also New York & Honduras R. M. Co. v. Riddle Airlines, 3 A.D.2d 457, 162 N.Y.S.2d 314 (1957), aff'd 4 N.Y.2d 755, 172 N.Y.S.2d 168, 149 N.E.2d 93 (1958).

10. Randolph v. American Airlines, Inc., supra note 9.

11. Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 440–448, 27 S.Ct. 350, 51 L.Ed. 553, 558–562 (1907); Civil Aeronautics Bd. v. Modern Air Transp., Inc., 179 F.2d 622, 624 (2d Cir. 1950); City of Susanville v. Lee C. Hess Co., 45 Cal.2d 684, 290 P.2d 520, 523 (1955); Hannum v. Hillyard, 131 Colo. 37, 278 P.2d 1015 (1955); State ex rel. Ass'n of Washington Industries v. Johnson, 56 Wash.2d 407, 353 P.2d 881 (1960).

to as the doctrine of primary jurisdiction and is based upon reasoning that the courts should not determine a question within the jurisdiction of an administrative tribunal prior to the decision of the tribunal where the issues, such as reasonableness of rates or fairness of regulations, fall within the special competence or expertise of the particular administrative agency.[12]

■■■ We are in accord with the rules of law stated and believe that they should govern us in our decision in this case. However, the defendant airline would have us go further and rule that the Federal Aviation Act[13] must be construed as investing the CAB with power to modify the common law rule that a common carrier may not relieve itself from liability for the consequences of its negligence. On the premise that we acknowledge such power as being vested in the CAB, the defendant would then have us hold that the CAB has the exclusive primary jurisdiction to adjudicate the reasonableness of the defendant's tariff rules 10 II and 10 III E which exempted it from all liability for loss or damage to jewelry and other personal property worn or carried aboard the airplane by the passenger. This we shall not do for the reasons hereafter stated.

As authority for its proposition, the defendant cites us to Lichten v. Eastern Airlines, Inc.,[14] a case become famous in legal annals for a new concept of the law enunciated therein and for the devastating logic of its lone dissenter, Judge Jerome Frank. In the Lichten case a passenger sought recovery from an airline carrier for the loss of jewelry in the face of a tariff filed with the CAB expressly exempting the carrier from liability for such loss. In affirming a summary judgment against the passenger,

the United States Court of Appeals for the Second Circuit held that the tariff after it was filed with the CAB must be presumed to be valid and controlling of the question of liability, since Congress by passing the Civil Aeronautics Act[15] intended that a single agency should have the final responsibility for supervising rates and services and since the act provided no prohibition against regulations exempting carriers from liability for their own negligence. The court further held that, under the doctrine of primary jurisdiction, it could not pass upon the reasonableness of the regulation until the plaintiff passenger had exhausted his administrative remedies by obtaining a final adjudication of that question by the agency, commenting in that respect:

"[I]t is well settled that questions of the reasonableness of rates and practices are to be left to the administrative agency in the first instance, and that under this doctrine of 'primary jurisdiction' the provisions of a tariff properly filed with the Board and within its authority are deemed valid until rejected by it. * * *

"If, then, the Civil Aeronautics Act[16] is to be construed as investing the Board with power to approve and accept a tariff which, like this one, exempts the carrier from all liability for the loss of or damage to certain named classes of articles, the reasonableness of the rule could be raised here only after the exhaustion of administrative remedies, and the exculpatory provisions must now be enforced. * * *"[17]

The majority found justification for construing the Civil Aeronautics Act as vesting the CAB with power to approve and accept Eastern Airlines' exculpatory tariff provi-

---

12. Civil Aeronautics Bd. v. Modern Air Transp., Inc., supra note 11.

13. 49 U.S.C.A. §§ 1301–1542, 72 Stat. 737–806 (1958) as amended. The Federal Aviation Act prior to 1958 was known as the Civil Aeronautics Act.

14. 189 F.2d 939, 25 A.L.R.2d 1337 (2d Cir. 1951).

15. See textual matter in note 13, supra.

16. See the textual sentence in note 13, supra.

17. Lichten v. Eastern Airlines, Inc., 189 F. 2d 939, 941, 25 A.L.R.2d 1337 (2d Cir. 1951).

sion in the fact that the act does not contain an express statutory prohibition against exemption of a common carrier from complete liability for negligence such as is embodied in the 1906 Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20(11).

While the rule thus established in Lichten has been followed in several other jurisdictions since,[18] it has never been passed upon by the Supreme Court of the United States. We do not propose to adopt it as the law for Alaska, the reason being that we are more firmly persuaded by Judge Frank that:

> "[T]he Croninger [19] case clearly shows that the purpose of that part of the Carmack Amendment which is relevant here was to nullify state legislation, or state decisional rules, and to substitute therefor the general Federal 'common law' rule. Under that Federal 'common law' rule, even before the Carmack Amendment, the Interstate Commerce Commission could not have legalized a tariff provision exempting a carrier from liability for its own negligence.

> \*   \*   \*   \*   \*   \*

> "[I]t is inconceivable that Congress intended, merely by remaining silent, to authorize the Board [CAB] to adopt a policy flatly at odds with the hitherto uniform Federal policy, frequently announced by the Supreme Court in decisions involving all sorts of transportation, and ultimately expressed by Congress in statutes governing carriers by rail, water carriers, and motor carriers. I do not see why the reasons for that rule—i. e., the encouragement of care on the part of the carriers, and the pro-

tection of shippers and passengers from imposition by the carriers—do not apply with equal force to transportation by air. I would suppose that for those reasons, if Congress intended that uniform rules should govern interstate air commerce, Congress intended that the hitherto federal rule as to liability should govern here." [20]

With respect to the so-called "exhaustion of administrative remedies" rule, Judge Frank stated, correctly we believe, that the rule did not apply in Lichten because the case did not concern itself with the reasonableness of the exculpatory provision requiring administrative discretion.

■ Viewing tariff rules 10 II and 10 III E in the light of the law pertinent to the facts of this case, as it was understood and applied before Lichten, and adopting the sound logic of Judge Frank's dissent, we conclude that 10 II and 10 III E are invalid, for they effectively exempt the defendant airline from all liability for loss or damage to jewelry and other personal property worn or carried aboard by the passenger.

■ The defendant would have us hold instead that, while 10 II and 10 III E may be divergent with 10 III A (quoted at length earlier in this opinion), 10 III A takes precedence over the other two tariffs and offers the passenger the opportunity to choose between a higher and lower liability by paying a greater valuation charge, even as to jewelry and other articles carried by the passenger since they are within the definition of "baggage and other personal property" mentioned in 10 III A.[21] The defendant theorizes that under the provisions of its three tariff rules, all that the passen-

18. Twentieth Century Delivery Service, Inc. v. St. Paul Fire & Marine Ins. Co., 242 F.2d 292, 300–302 (9th Cir. 1957); Kenney v. Northeast Airlines, 152 N.Y.S. 2d 966 (Sup.Ct.1956) ; Melnick v. National Air Lines, 189 Pa.Super. 316, 150 A.2d 566 (1959).

19. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913).

20. Lichten v. Eastern Airlines, supra note 17, 189 F.2d at 943–945.

21. For a case which seems to lend some support to the defendant's position as set forth in the text above, see Radinsky v. Western Air Lines, Inc., 125 Colo. 286, 242 P.2d 815 (1952).

ger had to do was advise the airline that he was carrying on board certain jewelry and other personal property, declare the value thereof and pay the increased charge. The theory fails because 10 II and 10 III E inform the passenger in no uncertain terms that jewelry, whether checked as baggage or not, and other personal property not checked as baggage, are carried at his own risk.[22]

In our opinion 10 III A read in connection with the other two tariff rules would only tend to confuse the passenger.

Having concluded that the defendant's tariff rules 10 II and 10 III E are contrary to law and therefore void, we deem it unnecessary to wait for the CAB to first make that determination,[23] for as Judge Frank pointed out in his dissent:

"However, with exceptions not here pertinent, the Supreme Court has held that a plaintiff who asserts that administrative action is void, because in excess of the administrative body's statutory authority, may proceed directly in court without awaiting an administrative determination as to the validity of that administrative action. Especially does that seem to be true when the administrative body is not a party to the suit. The rule may be different where the interpretation of the words of the statute conferring authority on the administrative agency involves the specialized experience of the agency itself. But that is not the situation here.

"Here, if my view is correct (i. e. that the Board plainly had no power to authorize this tariff provision) there is no room for so-called 'expertise', 'uniformity' will be attained, if the lower courts disagree, through a decision by the Supreme Court. Many cases have so held. * * *"[24]

For the reasons above stated the summary judgment is set aside and the case is remanded to the superior court with directions to proceed under rules of common law liability of a common carrier for its own negligence or that of its agents.

22. As to unchecked baggage and other personal property, the defendant's tariff rule 10 III E must be distinguished from the tariff rule considered and held valid in Mustard v. Eastern Air Lines, Inc., supra note 6, 156 N.E.2d at 698, which tariff provided as follows:

"(3) 'The liability * * * for the loss of * * * any personal property, including baggage (whether or not such property has been delivered into the custody of the carrier) shall be limited to an amount equal to the actual value of such property, which shall be conclusively presumed not to exceed $100 * * * unless the passenger has, at the time of presenting such property for transportation, when checking in for flight, declared a higher value and paid an additional charge * * *.'"

23. For cases holding that, where the claim is made that the administrative agency has exceeded its statutory authority, the courts have jurisdiction even if the plaintiff has not first sought redress before the agency, see Pennsylvania R.R. v. International Coal Min. Co., 230 U.S. 184, 197, 33 S.Ct. 893, 57 L.Ed. 1446, 1451 (1913); Security-First Nat'l Bank v. Los Angeles County, 35 Cal.2d 319, 217 P.2d 946 (1950), cert. denied 340 U.S. 891, 71 S.Ct. 207, 95 L.Ed. 646 (1950); Bohemian Breweries v. Koehler, 80 Idaho 438, 332 P.2d 875, 879–880 (1958); Beaumont v. Pennsylvania R.R., 127 N.Y.S.2d 216 (Sup.Ct.1953), modified 284 App.Div. 354, 131 N.Y.S.2d 652 (App.Div. 1954), aff'd 308 N.Y. 920, 127 N.E.2d 80 (1955), cert. denied 350 U.S. 838, 76 S.Ct. 75, 100 L.Ed. 747 (1955); Sunshine Dairy v. Peterson, 183 Or. 305, 193 P.2d 543, 560 (1948).

24. Lichten v. Eastern Airlines, supra note 14, 189 F.2d at 946.