**Agnes GELLERT and Lisa Gellert, d/b/a Danish Import Company, Appellees,**

v.

**UNITED AIRLINES, a Delaware corporation, Appellant.**

**No. 72–1451.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 15, 1972.

Decided Feb. 16, 1973.

Ray R. Christensen, of Christensen, Gardiner, Jensen & Evans, Salt Lake City, Utah, for appellant.

Arthur H. Nielsen, Salt Lake City, Utah (Michael Gottfredson, and Nielsen, Conder, Hansen & Henriod, Salt Lake City, Utah, with him on the brief), for appellees.

Before HILL and SETH, Circuit Judges, and CHRISTENSEN, District Judge.

SETH, Circuit Judge.

The plaintiffs brought this action against the defendant air carrier for damages alleged to have resulted from a delay in a shipment of ski clothing samples sent from New York to San Francisco.

The trial court directed a verdict for plaintiffs on the issue of liability, holding that the carrier was liable for all damages to plaintiffs' business resulting from the delay, and submitted to the jury only the question of the amount of such damages. The jury returned a verdict against appellant in the amount of $43,000.00, and the carrier has taken this appeal.

Plaintiffs-appellees, Agnes and Lisa Gellert, mother and daughter, were importers and sellers of ski wear. They began this business in 1960, and conducted it from their home in Salt Lake City, Utah. In the spring of 1968, appellees made a trip to Europe, and made arrangements with manufacturers of ski apparel to supply them on an exclusive basis. They also obtained samples of merchandise which they displayed at shows across the United States, as had been their custom. These shows were for the purpose of allowing prospective buyers to examine the samples of merchandise and place orders for them. Appellees would then order the needed goods in bulk from their European suppliers and on arrival ship the merchandise to their customers.

In the spring of 1968, appellees exhibited at the Los Angeles and Denver shows. After the Denver show, there was a show in New York, a show in Seattle, and the final show in San Francisco. Appellee, Lisa Gellert, attended and conducted the New York show, and at its conclusion the samples were packaged and addressed to appellees at their San Francisco hotel. Lisa Gellert then called appellant, United Airlines, and arranged for the shipment of the boxes of samples to San Francisco. A representative of appellant picked up the packages on Thursday, April 25, 1968, at appellee's New York hotel. The declared value of the shipment was $1,500.00.

On Friday, Lisa Gellert arrived in San Francisco and called appellant to inquire if the shipment had arrived. It had not, and did not thereafter. The show opened Sunday, and appellees were still

without the samples sent from New York. The show closed five days later. Appellees, still without the samples, received orders for approximately $4,000.00 worth of goods, whereas the previous year, their orders at the San Francisco show had totaled approximately $40,000.00. All the samples shipped from New York arrived in Salt Lake City some three days after the closing of the San Francisco show.

In addition to the loss of sales in San Francisco, appellees testified that thirteen of appellees' European suppliers terminated business with them because of the lack of orders. Appellees asserted that they lost other sales that they had made because the orders they did get were too small for suppliers to deliver. Because of this, appellees had to cancel orders that had been placed with them and lost customers.

After appellees put on their evidence, and appellant put the applicable tariff rules into evidence, the trial court directed a verdict on the issue of liability in favor of the appellees.

Appellant's first argument is that under the applicable tariff rules, the maximum amount of liability assumed by it as a carrier was $1,500.00, the declared value of the boxes to be shipped to San Francisco. The carrier urges that we hold that certain provisions of Rule 32 of the Official Air Freight Tariff No. 1–B applicable to this transaction limited its liability to the declared value of the shipment. This Rule 32(A) provides in pertinent part:

"(1) In consideration of carrier's rate for the transportation of any shipment, which rate in part is dependent upon the value of the shipment as determined pursuant to Rule 52, the shipper and all of the parties having an interest in the shipment agree that the value of the shipment shall be determined in accordance with the provisions of Rule 52 and that the total liability of the carrier shall in no

event exceed the value of the shipment as so determined.

\* \* \* \* \* \*

"(3) Except as provided in paragraph A(4) and A(5) of this rule, the total liability of the carrier shall in no event exceed—

(a) The value of the shipment as determined pursuant to Rule 52, or

(b) The actual value of the shipment, or

(c) The amount of any damages actually sustained, whichever is the least."

On the other hand, appellees direct us to Rule 30(3) of Official Air Freight Tariff No. 1–B which provides:

"(3) (Not applicable to U.A.) The carrier shall not be liable in any event for any consequential or special damages arising from transportation subject to tariffs governed by these rules, whether or not the carrier had knowledge that such damages might be incurred."

"U.A." in the above quotation refers to United Airlines, and indicates that this defendant carrier did not elect to come within the Rule 30(3).

The carrier takes the position that it is liable for consequential damages because it elected not to come within the above Rule 30(3) whereunder it could have excluded liability for such damages. However, as indicated above, it urges that its total liability for all damages is the amount that the shipper declared to be the value. This conclusion, it asserts, should also follow because its compensation for the shipment, both to meet its cost of carriage and the risk of loss, was determined in part by the amount of the declared value. The charge for the shipment in issue was determined in part by the value declared by the plaintiffs, thus if the value declared had been higher, the cost of the risk portion would have been greater. See Hart v. Pennsylvania R.R., 112 U.S. 331, 5 S.Ct. 151, 28 L.Ed.

717, and Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314.

The carrier thus argues that the "value" of the shipment, as to which the declaration limits its liability under Rule 32, includes consequential damage value of the nature here claimed. The shippers argue that the carrier was liable for all consequential damages which resulted regardless of declared value, since it did not elect to come within Rule 30(3) of Tariff No. 1–B.

■ Rule 32, by its terms, is not restricted in applicability to the loss or damage of the shipment, as the shippers here contend, but expressly states that the " . . . total liability of the carrier shall in no event exceed the value of the shipment. . . . " It is our view that the decision in Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936), is applicable to, and controls, the case at bar. In that case, the Supreme Court held that no damages above the declared value could be recovered since a tariff filed pursuant to a federal act known as the Carmack Amendment, 49 U.S.C. § 20(11), limited liability to a certain amount unless the shipment was declared to be of greater value, in which event liability was limited to the greater value. The tariff there provided: "Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value." See also Marquette Cement Mfg. Co. v. Louisville & Nashville R. R., 406 F.2d 731 (6th Cir.), and Randolf v. American Airlines, Inc., 103 Ohio App. 172, 144 N.E.2d 878.

■ The authorities have long held that a carrier cannot by contract exempt itself from liability for its own negligence. Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314. However, it can reasonably limit the extent of liability by giving the shipper a reasonable choice " . . . and the right to agree upon a rate proportionate with the value of the property transported." Thus there would seem to be some substantial doubt as to whether the carrier here could exempt itself from all liability for consequential damages. It apparently held such doubt also. This doubt in turn raises a serious question as to the validity or effectiveness of the Rule 30(3) in any event. Thus we must apply what we consider to be the effective rule relating to the liability. This is Rule 32(A) quoted above. In view of the above doubts relating to Rule 30(3), the terms used in Rule 32(A): "actual value of the shipment," "damages actually sustained," and "value of the shipment as determined pursuant to Rule 52," all must mean and include consequential damages of the nature here sought to be recovered. This construction makes the "value" terms in Rule 32(A) mean not only a limit on the "total liability," as expressly stated in the rule, but also to include *all liabilities* for loss, damage, or delay—direct or consequential. Thus the "total" of the dollars, and the "total" of types of liability were meant to be included.

Thus with the applicability of Rule 32(A) to these circumstances, with the express agreement thereby arising as to the limit on all damages, with the opportunity so presented to the shipper to select the declared limit, with the compensation for the shipment thereby commensurate with the risk assumed, the transaction comes within the established law relating to common carriers, as above described.

The judgment is set aside and the case is remanded to the trial court with directions to dismiss the complaint and the cause.