**W. M. BERTOLET II, Plaintiff**

v.

**PAN AMERICAN WORLD AIRWAYS, Defendant**

Civil No. 366-1968

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

July 29, 1974

MICHAEL, *Judge*

OPINION

This is an action in which plaintiff, W. M. Bertolet, sues the defendant, Pan American World Airways, in the amount of $3,417.00, his estimated value of an item of baggage, a one gallon (128 ounces) of 67% potassium gold

cyanide solution, for which he paid the required excess valuation fee to the airline agents and received a receipt which shows excess baggage valuation to be $2,500.00, and for which he paid the required fee of $2.50. See Pl's Ex. #1.

Plaintiff appeared by his attorneys, Bailey, Wood & Rosenberg (Rosenberg, Esq., of counsel), and the defendant, Pan American World Airways, a corporation, originally appeared by its attorneys, Young, Isherwood, Gibbs & Carney (Gibbs, Esq., of counsel), but was afterwards represented by Corneiro, Gibbs and Selke (Arnold M. Selke, Esq., of counsel).

Plaintiff filed the complaint on May 2, 1968, to which defendant answered on May 13, 1968, denying any knowledge or information sufficient to form a belief as to some of the allegations of the plaintiff and denying all others, and as a separate and distinct defense, claims that plaintiff had no insurable interest in the lost item and failed to state a claim upon which relief can be granted against the defendant. By reason of the above, the defendant prayed for judgment of dismissal of plaintiff's complaint, including disbursements and attorneys' fees.

Subsequent to the filing of defendant's Answer, plaintiff filed a Request for Admissions of Facts on June 24, 1968.

Thereafter, there were numerous delays in filing documents, including Stipulations, Interrogatories, Reply to Admissions of Facts, Motion for Summary Judgment, etc., until, after a hearing on February 11, 1970, the court entered the following:

## ORDER

The plaintiff having moved this Court for an Order of Summary Judgment, in accordance with Rule 56 of the Rules of Civil Procedure, and the defendant having cross-moved for an Order compelling the plaintiff to respond to interrogatories propounded by it, and unanswered, and the defendant having further moved for an

Order granting it leave to amend its answer in the manner set forth in its motion papers, and Howard K. Gibbs, having appeared on behalf of the defendant in opposition to the plaintiff's motion and in support of the defendant's cross motion, and Frederick Rosenberg, having appeared on behalf of the plaintiff in support of the plaintiff's motion in opposition to the defendant's cross motion and motion, and argument having been had before the Court, and Frederick Rosenberg having consented to an Order directing that answers to interrogatories be provided to the defendant within thirty (30) days of the date of this Court's Order, and due deliberation having been had thereon,

IT IS HEREBY ORDERED that the plaintiff's motion for summary judgment be and the same is hereby denied in all respects, and

IT IS FURTHER ORDERED that so much of the defendant's motion to amend, which requests leave to assert as an affirmative defense a limitation of the defendant's liability, is granted, and defendant is given leave to serve an amended answer in accordance with Order within ten (10) days of the date of this Order, and

IT IS FURTHER ORDERED that the defendant's motion to amend is otherwise denied, and

IT IS FURTHER ORDERED that the plaintiff serve upon the defendant answers to interrogatories propounded by the defendant within thirty (30) days of the date of this Order.

After the filing of defendant's amended Answer and Notice of Motion to Dismiss, and plaintiff's Answer to Interrogatories, the case came on for hearing on its merits on February 19, 1971, during which counsel for defendant stipulated (1) that the "jug" was received by defendant and never returned, and (2) that claim was filed within the time limit.

Upon conclusion of the hearing, the court (1) denied defendant's Motion to dismiss, (2) requested both sides to submit Briefs, (3) granted defendant's request to submit the applicable "Pan American World Airways Tariff" as certified by the Civil Aeronautics Board, with copy to plain-

tiff's attorney, (4) granted plaintiff's attorney's request to submit certain treaties on chemistry, with copy to defendant, and (5) granted both the right to inform the court of any objection thereto.

After hearing the evidence, examining the exhibits and other documents submitted, considering the Briefs and reading the Transcript filed July 20, 1973, the court makes the following:

## FINDINGS OF FACT

1. That plaintiff purchased an airline ticket from the defendant, Pan American World Airways, from Miami, Florida, to San Juan, P.R., and on the following day, prior to departure, plaintiff checked two pieces of luggage, one of which was a white plastic jug, similar to a clorox jug, containing a solution labeled "Potassium gold cyanide 67%."

2. That upon checking said baggage at defendant's counter in Miami, Florida, plaintiff informed defendant's agent that he wanted to hand-carry the jug because of its value, which request was refused and was taken aboard the aircraft as luggage.

3. That the plaintiff declared excess valuation at $2,500, which is the maximum for which the defendant would be liable in case of loss, and for which plaintiff paid $2.50.

4. That upon arrival in San Juan, plaintiff presented his baggage claim check to agents or employees of the defendant, who failed to deliver the white plastic jug.

5. That the said jug as described above was a gift to plaintiff by someone (a Mr. Fred Englehard of Englehard Industries), unknown personally to plaintiff, but to whom plaintiff had caused certain information (considered valuable by the plaintiff) to reach.

6. That plaintiff, upon being asked by an employee of the recipient of the information if there was anything he

159

·wished, plaintiff indicated he "would accept a small amount of potassium gold cyanide", and "expected to receive an ounce or two", but received "a gallon jug of the solution."

7. That in answers to interrogatories concerning the contents of the jug, etc., plaintiff stated the only label on it was "Potassium Gold Cyanide 67%; that "Potassium gold cyanide is a chemical solution liquid"; and the exact quantity of cyanide was unknown to him and not on label.

## DISCUSSION

At the outset of this case defendant claims that the burden of proof of value of the jug and its contents is upon plaintiff, which plaintiff admits to a point, but counters that by reason of its negligence, defendant is estopped from denying the valuation placed upon the jug and its contents by the plaintiff at the time it was delivered to defendant's agent, and against his will; that under the circumstances there is no way whereby either of the parties, after loss through negligence of defendant's agents, could determine the value.

The court heard the testimony of witnesses on both sides as to their experience with respect to potassium gold cyanide, who could only speculate as to the actual value of the contents of the jug which was delivered unwillingly to defendant's employees by the plaintiff. This evidence, therefore, contradictory as it was, could not establish to the court's satisfaction the value of the jug and its contents, neither could the leaflets on chemistry submitted to the court by the plaintiff.

It would appear to the court that if the plaintiff intended to collect from the defendant more than he believed the solution was worth in the case of loss, he would not have insisted that he be given the opportunity to hand-carry the jug himself.

The defendant has cited a number of cases in its brief and the court has read oodles of others which limit the liability of the carrier for lost baggage to certain declared valuation, but nowhere has the court been able to find, neither has the defendant cited any, wherein the precise question which is now before it had been passed upon; that is, if through negligence of a carrier, thereby leaving no possibility for the passenger to prove *actual* loss when there is a loss as herein found by the court, that the passenger is left without recourse.

Although Rule 18 (E) (1) of the Civil Aeronautics Board tariff provides, among other things, that "All claims are subject to proof of amount of loss", nowhere in any of the cases has the court found that this provision has been invoked or relied upon by the defendant. The reason could be, as stated by plaintiff in his brief, that "It is a maxim of equitable estoppel that where one of two innocent parties must suffer a loss, he who by his act or omission has occasioned the loss must sustain it."

In the case at bar the defendant obtained compensation for the responsibility it assumed. If there was any doubt as to its value, it should have required proof at the time. While there is no such requirement in the regulations, there is no prohibition against it.

■ As stated in Eastern Air Lines v. Williamson, 211 So.2d 912, "allowing carriers to file tariffs limiting their liability for negligence, does not change the common rule forbidding one from contracting against his own negligence. It simply means that the carrier shall obtain commensurate compensation for the responsibility assumed."

In the case of Odom v. Pacific Northern Airlines, Inc., 393 P.2d 112 (1964), at page 115 the court stated as follows:

"The authorities have uniformly held that in litigation growing out of the interstate shipment of personal property with a common

161

carrier by air, such as we have under consideration here, the rights and liabilities of the parties are determined by the federal law.

"Within the framework of both federal and state law there is also recognized and applied the common law principle that a common carrier may not exempt itself from liability for its own negligence or that of its servants. Speaking of that principle, the Supreme Court of the United States stated in 1952:

"There is a general rule of law that common carriers cannot stipulate for immunity from their own or their agents' negligence. While this general rule was fashioned by the courts, it has been continuously accepted as a guide for more than a century and has acquired the force and precision of a legislative enactment."

In the above case the court went on to say that:

"While common carriers cannot absolve themselves completely from liability for the consequences of their negligence, they can lawfully limit recovery to an amount less than the actual loss sustained by granting their customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge. For example, a carrier by air may lawfully provide in its tariff rules that its liability is limited to the value of $100.00 unless a higher value is declared in advance and additional charges paid."

In the case now before the court "a higher value [was] declared in advance and additional charges paid.

With reference to the Lichten v. Eastern Airlines, Inc., 189 F.2d 939, 941, which is cited in defendants' Brief, the court in the Odom case, supra, stated that "While the rule established in Lichten has been followed in several other jurisdictions since, it has never been passed upon by the Supreme Court of the United States. We do not propose to adopt it as the law of Alaska, the reason being that we are more firmly persuaded by Judge Frank that:

"The Croninger case clearly shows that the purpose of that part of the Carmack Amendment which is relevant here was to nullify state legislation, or state decisional rules, and to substitute therefor the general Federal 'common law' rule. Under that Federal 'common law' rule, even before the Carmack Amendment, the Interstate

Commerce Commission could not have legalized a tariff provision exempting a carrier from liability for its own negligence.

"It is inconceivable that Congress intended, merely by remaining silent, to authorize the Board (CAB) to adopt a policy flatly at odds with the hitherto uniform Federal policy, frequently announced by the Supreme Court in decisions involving all sorts of transportation, and ultimately expressed by Congress in statutes governing carriers. I do not see why the reasons for that rule—i.e., the encouragement of care on the part of the carriers, and the protection of shippers and passengers from imposition by the carriers—do not apply with equal force to transportation by air. I would suppose that for those reasons, if Congress intended that uniform rules should govern interstate air commerce, Congress intended that the hitherto federal rule as to liability should govern here."

While common carriers do not *wholly* stipulate for immunity from their own or their agents' negligence, as was done in the above cited case of Odom v. Pacific Northern Airlines, in this case the defendant is requiring proof which is not available to the plaintiff and which was not required of him when he declared the valuation of the item and paid the fee therefor.

It is possible that neither the defendant nor the court has been able to find any case where the precise question has been passed upon by other courts is due to the fact that airlines have not required in similar cases proof of value after loss through their own negligence. The reason therefor could be as cited above from the Supreme Court, that "There is a general rule of law that carriers cannot stipulate for immunity from their own or their agents' negligence."

CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter for the purpose of determining whether defendant is liable to plaintiff in any amount for insured lost baggage.

2. Plaintiff has shown that although he bought an airline ticket from Miami to San Juan and paid for excess baggage, at his arrival in San Juan he did not get the jug back, which the court finds to be the result of negligence on the part of the defendant's employees, which the defendant admits.

3. That due to the insistance of the employees of the defendant that the item of baggage should be delivered to them and their negligence in not being able to deliver it to plaintiff at his destination, defendant is liable to plaintiff for loss of the insured item in the amount of $2,500, the sum contracted for as shown on plaintiff's Ex. #1, and not in the amount of $3,417.60 for which he sued.

4. For the negligence of the defendant's agents and reasons above stated, let Judgment be drawn in favor of the plaintiff in the amount of $2,500, plus costs in the amount of $7.50 and an attorney's fee of $650.00.